OPINION
{¶ 1} This is an appeal and a cross-appeal from a final judgment awarding compensatory damages for breach of contract and in tort and punitive damages for the tortious conduct involved.
 {¶ 2} Defendant, Victor L. Dowers Associates, is a *Page 2 
general insurance agency owned by Defendant, Victor Dowers (both hereinafter referred to as "Dowers").
 {¶ 3} Plaintiff, Winner Trucking, Inc. ("Winner Trucking"), is a commercial motor-freight company. It owns and operates highway tractor-trailers in which it transports cargo for hire.
 {¶ 4} Beginning in 1996, Dowers agreed to act as Winner Trucking's agent in procuring five different forms of insurance coverage for Winner Trucking. Dowers represented that he had procured all five forms of coverage, but in fact procured only three. Dowers procured those coverages from Bolton Company ("Bolton"), which required two escrow deposits of $10,152 and $3,652, which Winner Trucking paid.
 {¶ 5} One of the three coverages Dowers said he acquired but did not is cargo coverage. Customers typically required Winner Trucking to produce proof of such coverage, and when they did Winner Trucking asked Dowers to provide a certificate of coverage. Dowers did, even though no cargo coverage existed.
 {¶ 6} In 2002, Winner Trucking experienced a loss of a customer's cargo of cattle valued at $30,446.38. Winner Trucking asked Dowers to obtain reimbursement for the loss from the insurer. Dowers delayed and offered excuses for *Page 3 
eighteen months, but finally admitted that Winner Trucking had no cargo coverage. Dowers paid Winner Trucking the value of its loss from his personal checking account, less a $2500 "deductible" that the phantom policy contained.
 {¶ 7} From August, 2003 to January, 2004, Dowers collected monthly premium payments totaling $38,166 from Winner Trucking that he failed to forward to Bolton. Dowers instead retained the money. As a result, Bolton cancelled the coverage it had provided Winner Trucking, retaining the two amounts in its escrow account for coverages Bolton had provided until the date of cancellation, for which Bolton had not been paid.
 {¶ 8} After Bolton's cancellation of Winner Trucking's coverages, Dowers applied for coverages to Equity Insurance Company ("Equity"). Dowers forged the name of Winner Trucking's president to the applications. Equity extended coverage, but cancelled the coverage it provided in April, 2004 for non-payment of premiums. Winner Trucking then terminated the relationship with Dowers.
 {¶ 9} Winner Trucking next obtained coverage through Phelan Insurance Agency ("Phelan"). When the new coverages were obtained by Phelan, Winner Trucking's premiums increased by a total of $33,178 for the first two years. Timothy Grow, Phelan's president, attributed the increase to the new *Page 4 
insurer's inability to project lower risks, because Winner Trucking lacked prior coverages and due to the related cancellations of coverage that had occurred.
 {¶ 10} Winner Trucking commenced the action underlying this appeal in December, 2004, seeking compensatory and punitive damages from Dowers. The trial court subsequently granted judgment for Winner Trucking on its liability claims as a Civ. R. 37(A) sanction due to Dowers' failure to provide discovery (Dkt. 25). The trial court accepted as true the allegations contained in Winner Trucking's Complaint, and found that Dowers had acted willfully, maliciously, and with a conscious disregard for the rights of Winner Trucking in failing to procure insurance, in converting Winner Trucking's premium payments to personal use, and in fraudulently misrepresenting to Winner Trucking the extent of insurance coverage that was procured.
 {¶ 11} After a hearing to determine the extent of Winner Trucking's damages, the trial court granted the following judgments for Winner Trucking and against Dowers: $38,166 as unjust enrichment for premiums Dowers retained; $33,178 as compensatory damages for the increase in new premiums Winner Trucking was required to pay; and $214,032 as and for punitive damages, that being three times the amount of compensatory *Page 5 
damages awarded (Dkt. 35).
 {¶ 12} Dowers filed a timely notice of appeal. Winner Trucking filed a timely notice of cross-appeal.
 {¶ 13} Dowers Appeal
 {¶ 14} FIRST ASSIGNMENT OF ERROR
 {¶ 15} "THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY GRANTING APPELLEE $33,178 ALLEGED COMPENSATORY DAMAGES FOR THE INCREASED INSURANCE PREMIUMS APPELLEE INCURRED, AS THIS AWARD WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 16} In civil cases, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.3d 279.
 {¶ 17} The trial court relied on the testimony of Timothy Grow to find that Winner Trucking suffered losses of $33,178 for increased costs of insurance premiums during the two years that passed after it terminated its relationship with Dowers.
 {¶ 18} Grow testified that the higher premium costs reflected a higher risk evaluation by the new insurer, which was itself the product of the lack of a record of claims for the years during which Dowers had not procured the required *Page 6 
coverage and/or retained the premiums Winner Trucking paid, as well as the cancellations of coverages resulting from that.
 {¶ 19} Grow prepared a summary (Plaintiff's Exhibit "B"), which reflects the increased costs of coverage for operation of ten (10) trucks in 2004 and eleven (11) trucks in 2005. Dowers complains that the coverage he failed to provide, from which the difference was calculated, was for eight (8) trucks only.
 {¶ 20} Dowers points to no evidence in the record showing that the coverage he had promised to provide was for only eight trucks. Dowers appeared at trial pro se, and in that capacity cross-examined Grow. A question that Dowers propounded to Grow suggests that Dowers agreed to procure coverage for eight trucks. March 20, 2006 Damage Hearing, p. 79. However, a question is not evidence, and in any event Grow stated that he could not "comment with regard to the specifics for a policy that I neither wrote or had [sic] the conditions or understanding." Id.
 {¶ 21} Dowers also complains that the trial court failed to consider that part of the increased cost of premiums was a product of the numerous citations for traffic code violations by Winner Trucking's drivers, which increased the assessed risk. Brian Winner, who is treasurer of Winner Trucking, *Page 7 
testified on cross-examination by Dowers that the company's current insurer is a high-risk insurer, and that "[w]e had some guys [that] had a lot of points on their license, and they're one of the companies that will take you on but you pay dearly for it." Id. at 36. However, Dowers elicited no evidence quantifying the extent to which the higher premium Winner Trucking pays is attributable to citations the drivers were given, and otherwise offered none.
 {¶ 22} Grow testified that he had been in the commercial insurance business since 1983, that he is licensed to sell insurance in thirty-one states, and that approximately sixty per cent of his firm's business involves insurance for trucking companies. Id. at 56-57. His estimates of the increased premiums Winner Trucking was required to pay, shown in Plaintiff's Exhibit "B", is a product of his comparison of the premiums it did pay for 2004 and 2005 with those that, in his opinion, the company would have paid but for the misconduct of Dowers. The difference is $33,178. That is competent, credible evidence supporting the trial court's award of compensatory damages.
 {¶ 23} The first assignment of error is overruled.
 {¶ 24} SECOND ASSIGNMENT OF ERROR
 {¶ 25} "THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY *Page 8 
GRANTING APPELLEE PUNITIVE DAMAGES UNDER OHIO LAW."
 {¶ 26} The trial court found that "[t]he Plaintiff has sought punitive damages for the conduct of the Defendants. The Court finds that such damages are appropriate due to the egregious conduct of the Defendants. For example, Defendants let insurance coverage lapse yet provided certificates of insurance to Plaintiff for use by business and government entities. Also, the Defendants kept premium payments and did not forward the appropriate amount to the insurance carriers. Finally, although Mr. Dowers conducted himself appropriately in Court, there were times when his testimony pushed the bounds of credibility for commercially reasonable conduct in the insurance industry. Punitive damages in the amount of three times the compensatory damages will be awarded." (Dkt. 35.)
 {¶ 27} Dowers argues that the trial court abused its discretion when it awarded punitive damages, because the record is devoid of any evidence that his conduct rises to the level of egregious fraud. He argues that punitive damages are unwarranted where the only loss is monetary. We do not agree.
 {¶ 28} A plaintiff must establish entitlement to punitive damages by clear and convincing evidence. R.C. 2315.21(D)(4); Cabe v. Lunich,70 Ohio St.3d 598, 601, 1994-Ohio-4. Punitive *Page 9 
damages are recoverable in a tort action against a defendant where "[t]he actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud. . . ." R.C. 2315.21(C)(1). See Calmes v.Goodyear Tire Rubber Co. (1991), 61 Ohio St.3d 470, 473,575 N.E.2d 416. Actual malice is "`(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other person that has a great probability of causing substantial harm.'" Calmes,61 Ohio St.3d at 473 (citation omitted). Actual malice may be inferred from conduct and surrounding circumstances. Leichtamer v. American MotorsCorp. (1981), 67 Ohio St.2d 456, 471, 424 N.E.2d 568 (citation omitted).
 {¶ 29} The trial court found that Dowers "acted willfully, maliciously, and with a conscious disregard for the rights of Plaintiff in failing to procure insurance, in converting Plaintiff's premium payments to personal use, and in fraudulently misrepresenting to Plaintiff the extent of insurance coverage that was procured." (Dkt. 25)
 {¶ 30} Dowers made numerous intentional misrepresentations to Winner Trucking over a number of years. The malice demonstrated in Dowers' intentional misrepresentations is heightened by Dowers' attempts to cover up his fraud. Dowers *Page 10 
issued certificates of cargo coverage to Winner Trucking's customers even though such coverage did not exist, and forged Ted Winner's signature on a document used to switch underwriters. This evidence supports a finding that Winner Trucking proved its entitlement to punitive damages by clear and convincing evidence.
 {¶ 31} The second assignment of error is overruled.
 {¶ 32} THIRD ASSIGNMENT OF ERROR
 {¶ 33} "THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY GRANTING $214,032 IN PUNITIVE DAMAGES BECAUSE IT WAS GROSSLY EXCESSIVE UNDER OHIO LAW."
 {¶ 34} The trial court combined the two compensatory damage sums it awarded, $38,166 for premiums Dowers retained and $33,178 for the additional cost of premiums Winner Trucking was required to pay, which together total $71,344, and awarded Winner Trucking three times that amount, $214,032, on its request for punitive damages. Dowers argues that the amount of punitive damages awarded to Winner Trucking violates the Due Process Clause of the federal Constitution.
 {¶ 35} "[T]he purpose of punitive damages is not to compensate a plaintiff, but to punish and deter certain conduct." Moskovitz v. Mt.Sinai Med. Ctr. (1994), 69 Ohio St.3d 638, 651, 635 N.E.2d 331. The focus of the award of *Page 11 
punitive damages is the defendant, with consideration of the twin aims of punishment and deterrence as to that defendant. Dardinger v. AnthemBlue Cross Blue Shield, 98 Ohio St.3d 77, 2002-Ohio-7113, at _178.
 {¶ 36} A lack of fair notice may render a sanction grossly excessive and thus unconstitutional. BMW of N. Am., Inc. v. Gore (1996),517 U.S. 559, 574-75, 116 S. Ct. 1589, 134 L.Ed.2d 809. Elementary notions of fairness "dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." Id. at 579.
 {¶ 37} The following three guideposts established in BMW indicate whether a defendant has received adequate notice of the possible sanction: "the degree of reprehensibility of the defendant's conduct, the disparity between the harm suffered by the plaintiff and the amount of the punitive damages award, and the difference between the punitive damages award and civil or criminal penalties authorized or imposed in similar cases." Wightman v. Consol. Rail Corp. (1999),86 Ohio St. 3d 431, 439-40, 715 N.E.2d 546.
 {¶ 38} The degree of reprehensibility of the defendant is "[p]erhaps the most important indicium of the reasonableness of a punitive damages award." BMW, 517 U.S. at 575. It is *Page 12 
here that Dowers fares most poorly. Dowers engaged in an intentional, fraudulent scheme over a number of years to bilk large sums of money from Winner Trucking. Although Dowers' conduct did not involve the health and safety of others, we do not agree with Dowers' proposition that punitive damages cannot be awarded unless the health and safety of others is put in jeopardy. Moreover, Dowers took a number of steps to cover up his wrongful actions. The trial court did not abuse its discretion in finding that the conduct of Dowers reaches the level of reprehensibility sufficient to warrant substantial punitive damages.
 {¶ 39} There is no magic formula for determining the proper amount of punitive damages. Rather, the amount that should be awarded is the amount that best accomplishes the twin aims of punishment and deterrence as to that defendant. "We do not require, or invite, financial ruination of a defendant that is liable for punitive damages. While certainly a higher award will always yield a greater punishment and greater deterrent, the punitive damages award should not go beyond what is necessary to achieve its goals. The law requires an effective punishment, not a draconian one." Dardinger, 2002-Ohio-7113, at _178.
 {¶ 40} Upon this record, we find that punitive damages in *Page 13 
an amount of three times the compensatory damages awarded is excessive. Rather, we believe punitive damages in an amount of double the compensatory damages awarded is adequate to accomplish the twin aims of punishment and deterrence of Dowers.
 {¶ 41} Dowers' third assignment of error is sustained.
 {¶ 42} Pursuant to App.R. 12(B), we will modify the award of punitive damages from $214,032.00 to $142, 688.00, which is twice the amount of the compensatory damages the trial court awarded. As thus modified, the judgment of the trial court will be affirmed.
 {¶ 43} Winner Trucking Cross-Appeal
 {¶ 44} ASSIGNMENT OF ERROR
 {¶ 45} "THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY FAILING TO AWARD WINNER TRUCKING COMPENSATORY DAMAGES IN THE AMOUNT OF $13,804 AS REIMBURSEMENT FOR ESCROW PAYMENTS RETAINED BY THE INSURANCE BROKER."
 {¶ 46} The trial court found that "Plaintiff has failed to prove that the premiums were not due to the carrier. Since Plaintiff has been awarded past premiums, it cannot also recover the escrow amount without also proving that the billing was not correct. Had the Plaintiff proved that the number of its trucks on the road matched the number of trucks *Page 14 
on the insurance policy, Plaintiff would have been entitled to the return of its escrow." (Dkt. 35.)
 {¶ 47} Winner Trucking argues that it is entitled to reimbursement for its escrow payments because compensatory damages are intended to make the plaintiff whole for the wrong done to him by the defendant. According to Winner Trucking, the escrow payments were applied to premiums that were delinquent as a result of Dowers' misappropriation of funds.
 {¶ 48} The trial court awarded Winner Trucking its past premiums. Therefore, to allow Winner Trucking to also recover the escrow amounts that were used to pay those past premiums would lead to a potential double recovery for plaintiff. As Winner Trucking concedes, compensatory damages are intended to make the plaintiff whole, not to create a windfall.
 {¶ 49} Winner Trucking's assignment of error is overruled.
 WOLFF, P.J. and BROGAN, J., concur. *Page 1