OPINION *Page 2 
{¶ 1} Defendant the Tab Tool Die Company, Inc. appeals a judgment of the Court of Common Pleas of Licking County, Ohio, which sustained the motion of plaintiff-appellee Dana Dick for a default judgment and sanctions. Appellant assigns five errors to the trial court:
 {¶ 2} "I. THE LOWER COURT ERRED IN GRANTING DEFAULT JUDGMENT PURSUANT TO CIVIL RULE 37 (D) WHICH REQUIRES A NEW TRIAL.
 {¶ 3} "II. THE COMPENSATORY DAMAGES AWARD WAS INADVERTENTLY INCREASED IN THE FINAL JUDGMENT ENTRY.
 {¶ 4} "III. THE COMPENSATORY DAMAGES AWARD WAS EXCESSIVE.
 {¶ 5} "IV. THE LOWER COURT ERRED BY AWARDING PUNITIVE DAMAGES WHICH REQUIRES A NEW TRIAL.
 {¶ 6} "V. THE LOWER COURT ERRED BY AWARDING THE PREJUDGMENT INTEREST."
 Background {¶ 7} The record indicates appellant employed appellee in its facility in Newark, Licking County, Ohio. On September 6, 2002, appellee's hand was crushed in a stamping press. Appellee underwent four surgeries, and ultimately had his had amputated. The trial court found as a direct and proximate result of the injury, appellee developed post-traumatic stress disorder and depression, and incurred $257,188.14 of *Page 3 
medical expenses. The court found appellee would incur at least $20,000 in future medical expenses.
 {¶ 8} The court found appellant failed to install point of operation guards, required by OSHA and industry standards, which would have prevented appellee's injury. The court found appellant had actual knowledge the press did not comply with OSHA's standards.
 {¶ 9} The court found appellant violated OSHA and industry standards in numerous ways concerning safety, including failing to maintain the press, failing to properly train appellee prior to operating the press, failing to provide safety training to appellee including lockout, tagout training, and failing to maintain maintenance records. The court found all appellant's presses were unguarded, and appellant had failed to come forward with any evidence of even a single step it took to ensure the safety of its employees. The court concluded appellant's conduct amounted to a conscious disregard for appellee's rights and safety, and had great probability of causing substantial harm to him. The court awarded appellee compensatory and punitive damages, plus pre-judgment interest.
 Procedure {¶ 10} The trial court entered default judgment as to liability, making findings of fact to support this sanction: on June 8, 2004, appellee served his first set of interrogatories and requests for production on the appellant. Appellant's responses were due 28 days later. On September 22, 2004, the court granted appellant leave until October 6, 2004 to disclose its expert witnesses. By May 5, 2005, appellant had still not *Page 4 
responded to appellee's discovery requests, but represented to the court it was working on them.
 {¶ 11} On July 18, 2005, appellee served a second set of interrogatories and requests for production of documents. Appellee's counsel made several inquiries as to the status of the discovery responses, and had to cancel several depositions because of appellant's failure to respond. Eventually, on December 1, 2005, appellee filed a motion to compel discovery and for sanctions. The appellant never responded to the motion.
 {¶ 12} The trial court ordered appellant to respond to the second set of interrogatories and requests for production of documents on or before December 30, 2005. Appellant did not fully respond to the second set of interrogatories and requests for documents.
 {¶ 13} On March 21, 2006, appellee filed a motion for judgment and sanctions based on appellant's failure to comply with the court's discovery orders. On April 5, 2006, the court held a final pre-trial and hearing on the motion for judgment and sanctions. At the hearing, the court ordered appellant to respond fully to the discovery requests no later than April 12, 2006. The appellant did not do so.
 {¶ 14} On May 5, 2006, the court announced its intention to enter judgment against appellant for violations of the court's orders to produce documents and respond to appellee's discovery requests. On May 10, 2006, appellant untimely filed a memorandum in opposition to the motion for default judgment and sanctions, and on May 16, 2006, supplemented its memorandum in opposition. In these memoranda, for the first time, the appellant asserted certain documents do not exist, and alleged it had provided all the documents it possessed. *Page 5 
 {¶ 15} The court found at no time at the May 5th or the May 10th hearing did appellant's counsel request that it be allowed to call witnesses. The court found appellant had not produced all balance sheets, income statements, and other corporate financial records which depicted the financial condition of appellant and its closely related corporations; all job applications for any employee or potential employees for the last ten years; the repair log for the machine on which appellee was injured; the repair logs for all machines owned by the appellants; and the maintenance records for the machine at issue.
 {¶ 16} The court found appellant's contention that the records do not exist was not credible, because two of appellant's witnesses had testified there were corporate financial documents, maintenance records, and repair logs. The court noted appellant had given differing reasons why the documents were missing, but produced no evidence. The court found appellant never indicated the documents did not exist until after the court had announced it would enter judgment in favor of appellee.
 I {¶ 17} In its first assignment of error, appellant argues the court erred in granting default judgment as a sanction for discovery violations.
 {¶ 18} In State ex rel. Dispatch Printing Company v. Johnson,106 Ohio St. 3d 160, 2005-Ohio-4384, 833 N.E. 2d 274, the Ohio Supreme Court reviewed a public records request. One of the issues before the court was the Columbus Dispatch's motion for sanctions for alleged discovery abuses by the State respondents in making witnesses and documents available. The Supreme Court found under Civ. R. 37 (D), if a party fails to attend his deposition, serve answers to interrogatories, or respond to a *Page 6 
request for inspection, the court may enter an order establishing certain facts in accordance with the movant's claim, may prevent a disobedient party from submitting evidence, may strike pleadings, or may render default judgment against the disobedient party. However, the Supreme Court cautioned a trial court abuses its discretion when it grants a default judgment for failure to respond to discovery requests unless the record shows willfulness or bad faith, Dispatch Printing
at paragraph 49, citing Toney v. Berkemer (1983), 6 Ohio St. 3d 455,453 N.E. 2d 700, syllabus by the court.
 {¶ 19} Appellant directs our attention to Societe Internationale PourParticipations Industrielles et Commerciales, S.A. v. Rogers (1958),357 U.S. 197, wherein the United States Supreme Court found a court should not dismiss a complaint because of a petitioner's non-compliance with a pre-trial production order if the failure to comply is due to inability, rather than willfulness, bad faith, or fault on the part of the petitioner.
 {¶ 20} The trial court has discretion to impose sanctions for failure to comply with discovery orders, and this court applies the abuse of discretion standard in reviewing the trial court's decision, Jones v.Hartranft, 78 Ohio St. 3d 368, 1997-Ohio-203, 678 N.E. 2d 530, at paragraph 3. The term "abuse of discretion" implies a trial court's attitude is unreasonable, arbitrary, or unconscionable, Id.
 {¶ 21} Appellant sets forth three reasons why we should find the court abused its discretion. First, appellants argue the default judgment was based upon material facts not at evidence before the trial court. Secondly, appellant urges the trial court sanctioned it for failure to produce certain documents which in fact had not been requested. Finally, appellant urges the sanction was too harsh, because it did not act willfully or in bad faith. *Page 7 
 {¶ 22} The trial court granted default judgment because it did not believe appellant's representation that the maintenance documents did not exist. Appellant argues the court based its conclusions on statements made by appellant's president, Philip Newton, in his deposition. The Court entered the judgment on June 26, 2006, but the deposition was not filed with the court until November 16, 2006. However, appellee attached a portion of the deposition to its supplemental motion for default judgment filed on April 25, 2006. It does not appear appellant argued to the trial court that the deposition pages were not properly before the court, and in fact, appellant does not now dispute the accuracy of the pages. Similarly, appellee's motion to compel discovery and issue sanctions filed on December 1, 2005, listed the documents appellee had sought in his second request for production of documents. Appellant did not argue to the trial court that appellee had not in fact requested those documents.
 {¶ 23} Appellant asserts the court abused its discretion in granting default judgment on the issue of liability based in part on the failure to provide financial records, which are irrelevant to the issue of liability. We find, however, the failure to produce these records was more evidence of appellant's failure to comply with discovery.
 {¶ 24} The record indicates appellee and the trial court gave appellant nearly two years to produce the requested documents. Only after appellee had filed his motion for default did appellant inform the court the requested documents did not exist. The trial court was free to believe or disbelieve appellant's explanations of why the documents do not exist. *Page 8 
 {¶ 25} We find the record contains ample evidence appellant acted willfully and in bad faith, and we find the trial court did not abuse its discretion in granting the default judgment.
 {¶ 26} The first assignment of error is overruled.
 II {¶ 27} In its second assignment of error, appellant argues the court awarded appellee $2,707,188.14 in compensatory damages, but the judgment entry reflects an award of $2,777,188.14. Appellee concedes the lower number is the proper amount.
 {¶ 28} The second assignment of error is sustained.
 III {¶ 29} In its third assignment of error, appellant argues the compensatory damages are excessive. Appellant argues appellee requested $250,000 for past compensation and $250,000 to $500,000 in future compensatory damages.
 {¶ 30} Appellee responds the record supports the award. Appellee was conscious when his hand was smashed, and although he managed to stop the press, it was necessary to turn it back on to complete its cycle before his hand could be removed from the machine. Although appellee underwent four separate surgeries, ultimately, his hand could not be saved. Appellee continues to suffer pain despite the amputation. Appellee suffered from severe psychological injuries and his quality of life has been damaged.
 {¶ 31} We find the record supports the trial court's award of compensatory damages. The third assignment of error is overruled.
 IV *Page 9 {¶ 32} In its fourth assignment of error, appellant argues the court erred by awarding punitive damages. Appellant states this court reviews an award of punitive damages de novo, Dardinger v. Anthem Blue Cross Blue Shield, 98 Ohio St. 3d 77, 2002-Ohio-7113, 781 N.E. 2d 121.
 {¶ 33} In the Dardinger case, the Supreme Court noted the purpose of punitive damages is not to compensate the plaintiff, but to punish and deter the defendant's conduct, Dardinger at paragraph 178, citingMoskovitz v. Mt. Sinai Medical Center, 69 Ohio St. 3d 638,1994-Ohio-324, 635 N.E.2d 331. Punitive damages awards are more about the defendant's behavior than the plaintiff's loss, Id., citingWightman v. Consolidated Rail Corporation, 86 Ohio St. 3d 431,1999-Ohio-119, 715 N.E. 2d 546. The court noted punitive damages should not go beyond what is necessary to punish and deter the defendant's actions, and should be effective but not draconian, Id.
 {¶ 34} The trial court awarded appellee $3,000,000 in punitive damages. Appellant argues the record does not demonstrate it acted with malice, and the award is excessive under Ohio law.
 {¶ 35} Appellant also argues the punitive damages award violates federal due process requirements, see BMW of North America, Inc. v.Gore (1996), 517 U.S. 559. In the BMW case, the U.S. Supreme Court held a person must receive fair notice not only of the conduct that might subject him to punishment, but also the severity of the penalty which might be imposed. The BMW case set out three factors which indicate whether a defendant has received adequate notice of the possible sanction: the degree of reprehensibility of the defendant's conduct; the disparity between the harm suffered by the plaintiff and the amount of punitive damages award; and the difference between *Page 10 
the punitive damages award and civil or criminal penalties authorized or imposed in similar cases. The Ohio Supreme Court adopted these factors in Wightman, supra.
 {¶ 36} Appellee argues appellant has waived these arguments because it never raised them in the trial court. Further, appellee argues there was undisputed testimony before the trial court that: there was not a single safety guard in the plant, and appellant knew there had never been any point of operation guards on the press; there was sign on the press stating it was dangerous; although appellant purchased, installed, and even upgraded the press which injured appellee, appellant failed to install point of operation guards required by OSHA and industries standards; appellant hired appellee to inspect the parts, not to operate the press; appellant failed to train appellee on how to safely operate the press and the only training appellee received was how to inspect the parts; and appellant failed to regularly inspect the presses.
 {¶ 37} Appellant argues the trial court's award was made in a "financial vacuum" and bears no rational relationship to the compensatory award or the economic facts. Appellant asserts before it could properly calculate punitive damages, the trial court was required to review evidence of appellant's operations and financial condition. In light of the fact appellant failed to produce the financial information and evidence of the operations, see I, supra, we find appellant cannot now argue the court should have considered these factors.
 {¶ 38} We find the punitive damages are not excessive on this record. Accordingly, the fourth assignment of error is overruled.
 V *Page 11 {¶ 39} Appellant argues the court should not have awarded pre-judgment interest. This court reviews an award of pre-judgment interest using the abuse of discretion standard, Pruszynski v. Reeves, 117 Ohio St. 3d 92,2008-Ohio-510, 881 N.E. 2d 1230.
 {¶ 40} R.C. 1343.03 permits the court to award pre-judgment interest if it finds the party required to pay the money failed to make a good-faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good-faith effort to settle the case. The statute provides pre-judgment interest is appropriate in an action where the party required to pay the money engaged in the conduct resulting in liability with the deliberate purpose of causing harm to the party to whom the money was paid, in which case, the pre-judgment interest runs from the date the cause of action accrued. Effective June, 2004, the statute provides a court may not award pre-judgment interest on future compensatory damages. Here the court awarded prejudgment interest on the entire award. Appellant urges us to apply the more recent version of R.C. 1343.03.
 {¶ 41} In Hodesh v. Korelitz, Hamilton App. No. C-061013, C-061040, C-070168, and C-070172, 2008-Ohio-2052, the First District found the statute in effect on the date the pre-judgment interest started to run must be applied; to do otherwise would amount to a retroactive application of the newer statute. Here, prejudgment interest starts to run from the date the cause of action accrued, which is September 6, 2002, the date appellee was injured.
 {¶ 42} Some factors the Supreme Court has applied in determining whether a party has made a good faith effort to settle include: whether the party has fully *Page 12 
cooperated in discovery proceedings, rationally evaluated his potential liability, not attempted to unnecessarily delay any of the proceedings, and made a good faith monetary settlement offer or responded in good faith to an offer from the other party, see, e.g., Villella v. WaikemMotors, Inc. (1989), 45 Ohio St. 3d 36, 543 N.E.2d 464.
 {¶ 43} Our review of the record leads us to conclude the trial court properly awarded prejudgment interest from the date of injury, given appellant's failure to cooperate in discovery.
 {¶ 44} The fifth assignment of error is overruled.
 {¶ 45} For the foregoing reasons, the judgment of the Court of Common Pleas of Licking County, Ohio, affirmed in part and reversed in part, and the cause is remanded to the court with instructions to correct the compensatory damages award.
 Gwin, P.J., Farmer, J., and Wise, J., concur. *Page 13 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio, affirmed in part and reversed in part, and the cause is remanded to the court with instructions to correct the compensatory damages award. Costs to appellant. *Page 1