[Cite as *T.P. v. Weiss*, 2013-Ohio-1402.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| T.P. | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Sheila G. Farmer, J. |
| -vs- | : | |
| | : | Case No. 12 CAE 03 0014 |
| WILLIAM P. WEISS, JR. | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Delaware County Court of
Common Pleas, Case No. 09CVC070973

JUDGMENT:     AFFIRMED

DATE OF JUDGMENT ENTRY:     March 25, 2013

APPEARANCES:

For Appellant:                              For Appellee:

ERIC J. ALLEN                          JACOB A. SCHLOSSER
713 South Front                        4937 West Broad St.
Columbus, OH 43206                     Columbus, OH 43228

*Delaney, P.J.*

{¶1}  Defendant-Appellant William P. Weiss, Jr. appeals the February 6, 2012 judgment entry of the Delaware County Court of Common Pleas.

### FACTS AND PROCEDURAL HISTORY

{¶2}  On June 8, 2009, Defendant-Appellant William P. Weiss, Jr. entered an Alford Plea of guilty to the charge of sexual battery, in violation of R.C. 2907.03(A)(2), a felony of the third degree.  The trial court sentenced Weiss to six months in the Delaware County Jail and ordered Weiss to pay a fine of $7,500.00.  This Court denied Weiss's motion to file a delayed appeal of his criminal conviction and sentence.

{¶3}  The victim in the criminal case was Plaintiff-Appellee T.P.  After Weiss's conviction, T.P. filed a complaint in the Delaware County Court of Common Pleas against Weiss.  In her complaint, T.P. alleged two causes of action.  First, she stated she had a civil claim under R.C. 2307.60 pursuant to Weiss's criminal conviction for sexual battery.  T.P.'s second claim was for common law assault and battery.  In her complaint, she requested compensatory and punitive damages, and attorney's fees.

{¶4}  On August 15, 2011, the trial court conducted a bench trial on T.P.'s complaint on the issue of compensatory damages only.  The trial court bifurcated the issues of punitive damages and attorney's fees.  The following evidence was adduced at trial.

{¶5}  Weiss and T.P. were acquainted with one another because T.P was Weiss's hairstylist.  (T. 69.)  He had been her client for a few months when Weiss invited T.P. to attend an evening rock concert with him in Columbus, Ohio on July 29,

2008.  T.P. accepted.  (T. 70.)  They agreed she would come to his home in Delaware County and go to the concert from there.  (T. 71.)

{¶6}  T.P. is a single mother and arranged for a babysitter to watch her children the evening of July 29, 2008.  T.P. arrived at Weiss's home at approximately 9:00 p.m. to 9:30 p.m.  Prior to T.P.'s arrival, Weiss prepared two rum and Coke drinks.  When T.P. arrived, the drinks were sitting on the kitchen island and Weiss offered her the rum and Coke drink and took one for himself.  (T. 73.)  T.P. noticed the drink tasted funny to her.  (T. 72.)  She asked if Weiss had used Diet Coke, but Weiss said it was regular.  *Id.*

{¶7}  The two discussed their evening plans and Weiss felt it was too late to go to the concert.  *Id.*  They considered going to restaurant instead.  *Id.*  Weiss stepped away to use the restroom and T.P. poured a third of the drink down the sink because she felt if she finished the drink quickly, the quicker they could leave the house.  *Id.*  When Weiss came out of the bathroom, T.P. quickly drank the remaining third of the drink.  *Id.*  The drink tasted bitter to her, "like an aspirin left in your mouth too long."  (T. 73.)

{¶8}  T.P. and Weiss went to the garage and got into his car to drive to a restaurant.  (T. 75.)  T.P. testified she had no memory of what occurred after they got into Weiss's car.  *Id.*

{¶9}  Weiss testified that he and T.P. went to a restaurant around 10:00 p.m.  (T. 48.)  They were at the restaurant for only forty-five minutes because Weiss said T.P. got a call on her cell phone from her babysitter and she spoke to the babysitter

for about twenty minutes. (T. 49.) T.P. did not eat anything and she only drank half of a beer at the restaurant. (T. 50.)

{¶10} They left the restaurant and went back to Weiss's home. (T. 51.) Weiss testified T.P. laid down on Weiss's couch and may or may not have fallen asleep. (T. 52.) T.P. woke up around 11:45 p.m. and seemed to "spark up." (T. 54.) Weiss stated she ran to him, leapt into his arms, and they began to kiss. *Id.* They went to the foyer of Weiss's home because Weiss knew T.P. had to leave to get home to the babysitter. (T. 54-55.) Weiss stated they engaged in consensual sexual intercourse in the foyer. (T. 55.) Weiss stated that T.P. left and they spoke on the cell phone when she arrived home. (T. 58.)

{¶11} T.P. testified her last memory was getting into Weiss's car. (T. 75.) Her next memory was Weiss saying he liked the color of her underwear. (T. 76.) T.P. was standing in the hallway and Weiss was behind her. *Id.* T.P. felt panic because Weiss should not know the color of her underwear and she was late in getting home to her children. (T. 77.) She walked unsteadily to her car and got into her car. *Id.* Weiss did not assist her to her car, but stood in the garage. He was not wearing a shirt. *Id.*

{¶12} T.P. was able to drive home. She felt like she was extremely drunk; she was nauseous and everything was spinning. (T. 78.) She vomited in the parking lot. Id. She has no recollection of driving the babysitter home. *Id.*

{¶13} The next morning when she woke up, she was still very sick. (T. 80.) She wondered why her underwear and pants were soaked. *Id.* She called her friend who recommended that she go to the hospital because she was hysterical and incoherent. (T. 11.) She called another friend who took her to the emergency room of

the Dublin Methodist Hospital. (T. 81.) The hospital treated T.P. for her nausea and requested to complete a sexual assault exam based on T.P.'s statements. T.P. refused the exam and left the hospital. (T. 82.)

{¶14} In the following days, Weiss contacted T.P. but T.P. ignored his calls. Weiss texted T.P. a photograph of his nude torso with the message, "In case you don't remember what I look like." (T. 82.) Weiss stated the text was sent at T.P.'s request. (T. 58.) T.P. denied making the request. (T. 83.) T.P. later called Weiss from work in the presence of her employer. (T. 83.) She asked him to fill in the blanks of what occurred. After the phone call, T.P. resolved to go back to the hospital and complete the rape kit. (T. 84.) The hospital contacted the Delaware County Sheriff's Department and Detective Ullom conducted an investigation. *Id.*

{¶15} Per Detective Ullom's request, T.P. called Weiss and recorded the phone call. (T. 85.) In the conversation, which was admitted as an exhibit, Weiss stated they had sexual intercourse. (T. 85.)

{¶16} Since the incident, T.P. has had problems sleeping. (T. 86.) She has called sexual assault hotlines for assistance but it has not helped her. *Id.* When she testified before the Delaware County Grand Jury, T.P. felt anxiety resulting in crying and vomiting. *Id.* T.P. has missed work and has a difficult time with male clients. (T. 88.) She has had panic attacks when out in public and prefers to stay at home and sleep. (T. 88.) She sees her family physician for care. (T. 87.)

{¶17} Dr. Alford Staubus testified as T.P.'s expert witness. He is an emeritus faculty of The Ohio State University College of Pharmacy and the president of A and A Consultant, Inc., a forensic toxicology consulting corporation. (T. 105.) Dr. Staubus

interviewed T.P., took a history from T.P., listened to her testimony, and reviewed the medical records in the case. (T. 107-109.) It was in his opinion, within a reasonable degree of medical and scientific probability, there had to be something in the drink made by Weiss, other than the rum and Coke. (T. 109.) Based on T.P.'s signs and symptoms, Dr. Staubus opined the drink probably contained gamma hydroxybutyric, or GHB. (T. 111.) GHB is associated with amnesia or blackout periods. Id. During the period of intoxication, there is interference with the short term memory to long term memory. (T. 112.) The individual can still function and have a conversation under the influence. *Id.* GHB is made illegally in the county and can probably be ordered over the internet. (T. 113.) It can come in powder format that you can add to a drink or add to water then administer with a dropper. (T. 113-114.) GHB is bitter to the taste. (T. 113.)

{¶18} While T.P. was in the hospital, they drew her blood and took a urine sample. Dr. Staubus testified GHB is rapidly eliminated in the human body and is normally not able to be detected more than eight hours after administration. (T. 115-116.) The hospital conducted a drug screen and it came out negative. (T. 116.)

{¶19} Dr. Staubus testified that T.P.'s symptoms of a blackout, confusion, vomiting, dry heaves, disorientation, and dizziness were consistent with GHB usage. (T. 110, 116.) Dr. Staubus considered her testimony as to the amount of alcohol she stated she drank that night and opined her symptoms were totally inconsistent with the small amount of alcohol. (T. 110.)

{¶20} On December 1, 2011, the trial court issued its judgment entry. It found that T.P. proved by the preponderance of the evidence that on July 29, 2008, Weiss

committed a sexual assault and battery on T.P. The trial court found T.P. was entitled to damages under R.C. 2307.60 as well as for the common law tort of assault and battery. The trial court awarded T.P. $17,313.34 in compensatory damages -- $1,573.94 in medical bills and $15,739.40 for pain and suffering. It concluded by finding that the clear and convincing evidence showed that Weiss's actions demonstrated malice and ill will toward T.P. and T.P. was entitled to recover punitive or exemplary damages against Weiss. The trial court set the matter for a punitive damages hearing.

{¶21} A hearing on punitive damages and attorney's fees was held on January 18, 2012. The attorneys rested on the record established at the previous hearing and submitted an affidavit as to attorney's fees.

{¶22} On February 6, 2012, the trial court issued its judgment entry as to punitive damages and attorney's fees. It reiterated that it had found that Weiss's actions demonstrated malice and ill will towards T.P. and T.P. was entitled to punitive damages. The trial court found Weiss has shown no remorse for his actions. As such, the trial court awarded T.P. punitive damages in the amount of $340,000.00 or $17,000.00 for 20 years. The trial court found that the limiting factors of R.C. 2315.21(D)(2) did not apply because Weiss was convicted under R.C. 2907.03(A)(2), which has a culpable mental state of knowingly, and that felony conviction was the basis of T.P.'s tort action. Under R.C. 2315.21(D)(6), such a conviction is an exception to the limiting factors of R.C. 2315.21(D)(2).

{¶23} It is from this decision Weiss now appeals.

**ASSIGNMENTS OF ERROR**

{¶24} Weiss raises two Assignments of Error:

{¶25} "I. THE TRIAL COURT ERRED IN ORDERING PUNITIVE DAMAGES IN THE AMOUNT OF $340,000.00, TWENTY TIMES THE COMPENSATORY DAMAGES, IN THIS MATTER IN DIRECT VIOLATION OF STATE FARM MUT. AUTO. INS. CO[.] V[.] CAMPBELL, 123 S. CT[.] 1513, THEREBY VIOLATING APPELLANT'S RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION[.]

{¶26} "II. THE APPLICABLE MENTAL STATE OF 2907.03(A)(2) IS NOT PURPOSELY OR KNOWINGLY AND THEREFORE THE COURT IS REQUIRED TO APPLY 2315.21(D)(2)."

**ANALYSIS**

***I. and II.***

{¶27} The trial court awarded T.P. compensatory damages in the amount of $17,313.34 and punitive damages in the amount of $340,000.00.  Weiss does not argue against the underlying finding of punitive damages but that the punitive damage award of $340,000, twenty times the compensatory damages, was excessive and in violation of Weiss's due process protections.  Weiss states a more appropriate award would be $155,820.06 or nine times the compensatory damages.

{¶28} In resolving the issue of whether the punitive damages award was excessive, we analyze both Assignments of Error.  Weiss concedes he did not raise his second Assignment of Error at the trial court level.  Generally, arguments raised for the first time on appeal are waived or may be reviewed for plain error.  However, in

answering the first Assignment of Error, we touch upon the argument raised in the second Assignment of Error.

{¶29} In evaluating whether a punitive or exemplary damages award is the appropriate amount, courts must consider both statutory requirements and constitutional guidelines. We begin our discussion by reviewing the statutory caps placed upon punitive damages awarded in tort cases.

<u>R.C. 2315.21 and Statutory Caps for Punitive Damages</u>

{¶30} The award of punitive damages in tort actions is currently governed by Ohio statute. Section 2315.21 of the Revised Code became effective April 7, 2005. Under the statute, punitive or exemplary damages are not recoverable from a defendant in a tort action unless the trier of fact has returned a verdict or has made a determination of the total compensatory damages recoverable by the plaintiff from that defendant. R.C. 2315.21(C)(2). The statute also provides such damages are not recoverable from a defendant in a tort action unless the actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud, or that the defendant as principal or master knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate. R.C. 2315.21(C)(1). Punitive damages are available for the tort of assault and battery if the trial court finds the act of the defendant was maliciously done. *Carter v. Petroff*, 5th Dist. No. 360, 1931 WL 2671 (Sept. 25, 1931).

{¶31} R.C. 2315.21(D)(2)(a) limits punitive damages in tort actions to a maximum of two times the total amount of compensatory damages awarded to plaintiff per defendant. Punitive damages are further limited if the defendant is a small

employer or individual. R.C. 2315.21(D)(2)(b). If the defendant is a small employer or individual, the court shall not enter judgment for punitive or exemplary damages in excess of the lesser of two times the amount of the compensatory damages awarded to plaintiff or ten percent of the employer's or individual's net worth when the tort was committed up to a maximum of $350,000. R.C. 2315.21(D)(2)(b).

{¶32} There is an exception to the limits established by R.C. 2315.21(D)(2). R.C. 2315.21(D)(6) states that R.C. 2315.21(D)(2) does not apply to a "tort action where the alleged injury, death, or loss to person or property resulted from the defendant acting with one or more of the culpable mental states of purposely and knowingly as described in section 2901.22 of the Revised Code and when the defendant has been convicted of or pleaded guilty to a criminal offense that is a felony, that had as an element of the offense one or more of the culpable mental states of purposely and knowingly as described in that section, and that is the basis of the tort action."

{¶33} T.P. brought her civil action for Weiss's actions that resulted in his criminal conviction for sexual battery, in violation of R.C. 2907.03(A)(2), a felony of the third degree. R.C. 2907.03(A)(2) states that no person shall engage in sexual conduct with another, not the spouse of the offender, when * * * the offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired.

{¶34} In Weiss's second Assignment of Error, Weiss raises the issue of the necessary mens rea in R.C. 2907.03(A)(2). This analysis is necessary to determine whether the punitive damages were in violation of the cap and/or excessive as raised

in Weiss's first Assignment of Error.  The Tenth District Court of Appeals held in *State v. Stricker*, 10th Dist. No. 03AP-746, 2004-Ohio-3557, that

> [S]exual battery under R.C. 2907.03(A)(2) does not require that the offender act with "actual knowledge."  Rather, the statute merely requires that the offender act "knowingly."  R.C. 2901.22(B) defines "knowingly" as follows: A person acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when he is aware that such circumstances probably exist.

{¶35} *Id.* at ¶ 31.  *See also In re G.E.S.*, 9th Dist. No. 23963, 2008-Ohio-2671.

{¶36} T.P.'s complaint alleged two causes of action.  The first was a claim pursuant to R.C. 2307.60.  The statute reads,

> Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code.

R.C. 2307.60(A)(1).

{¶37} T.P.'s second claim was for the common law tort of assault and battery based on Weiss's actions on July 29, 2008.

{¶38} Based on the exception found in R.C. 2315.21(D)(6) and the basis of T.P.'s claim, we find the statutory cap to a punitive damages award under R.C. 2315.21(D)(2) does not apply.  Our analysis as to whether the punitive damages award was excessive in this case does not end here.  We must next determine under the Due Process Clause whether the punitive damages award was such an amount as to violate Weiss's due process protections.

<u>Due Process and the Valuation of Punitive Damages</u>

{¶39} While a punitive damages award may comply with statutory cap requirements, courts must also examine whether the award comports with constitutional requirements.  More specifically, courts must determine whether the punitive damage award is not excessive under the Due Process Clause of the United States Constitution.

Since at least 1991, the United States Supreme Court has recognized that the Due Process Clause of the Fourteenth Amendment imposes a limit on the size of punitive damage awards.  *Pacific Mut. Life Ins. Co. v. Haslip* (1991), 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1.  *See also Honda Motor Co. v. Oberg* (1994), 512 U.S. 415, 420, 114 S.Ct. 2331, 129 L.Ed.2d 336 (citing *TXO Prod. Corp. v. Alliance Resources Corp.* (1993), 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366).  The determination of whether a punitive damage award is unconstitutionally excessive is rooted in the Due Process Clause.  *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.* (2001), 532 U.S. 424, 433–434, 121 S.Ct. 1678, 149 L.Ed.2d 674.  An award of punitive

damages violates due process when it can be categorized as "grossly excessive" in relation to the state's legitimate interests in punishing unlawful conduct and deterring its repetition. [*BMW v.*] *Gore*, 517 U.S. at 568, 116 S.Ct. 1589, 134 L.Ed.2d 809 [1996].

*Barnes v. University Hospitals of Cleveland*, 119 Ohio St.3d 173, 2008-Ohio-3344, 893 N.E.2d 142, ¶ 31.

{¶40} In *BMW v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), the United States Supreme Court "instructed that elementary notions of fairness 'dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." *Barnes*, at ¶ 32 citing *Gore*, 517 U.S. at 574. The Court established three factors to use in "evaluating whether a lack of notice renders a punitive damage award grossly excessive and therefore unconstitutional: (1) the degree of reprehensibility of the defendant's misconduct, (2) the disparity between the harm or potential harm suffered by the plaintiff and the punitive-damages award, and (3) the difference between the award and the civil penalties authorized or imposed in comparable cases. *Id.* at 575, 116 S.Ct. 1589, 134 L.Ed.2d 809." *Barnes*, at ¶ 32. In *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), the United States Supreme Court stated a punitive damage award must comport with the principles set forth in *Gore*. The Ohio Supreme Court ordered lower courts reviewing a punitive damage award for excessiveness to use the *Gore* guidelines in *Barnes v. University Hospitals of Cleveland*, 119 Ohio St.3d 173, 2008-Ohio-3344, 893 N.E.2d 142, ¶ 40.

As such, we must use the *Gore* guidelines in reviewing the $340,000 punitive damage award in the present case to determine if it is both reasonable and proportional.

{¶41} The trial court determined in its December 1, 2011 judgment entry that T.P. established by clear and convincing evidence that Weiss's actions demonstrated malice and ill will toward T.P., entitling T.P. to recover punitive or exemplary damages against Weiss. In the February 6, 2012 judgment entry, the trial court held as follows as to the punitive damage award amount:

> The Court further finds that the Defendant has shown no remorse. The Court finds by clear and convincing evidence that the Plaintiff not only suffered from the reality that she had unknowingly been sexually violated but that by its very nature the Defendant's conduct will "haunt" the Plaintiff for the remainder of her life. It will humiliate, embarrass and cause Plaintiff severe emotional distress. The Court therefore finds that the Defendant's actions were so extreme, outrageous and well beyond all bounds of decency, such that punitive or exemplary damages in the sum of $340,000 ($17,000 per year for 20 years) is appropriate.

{¶42} The purpose of punitive damages is not to compensate the plaintiff, but to punish and deter the defendant's conduct. *Dick v. Tab Tool & Die Co.*, Inc., 5th Dist. No. 2008-CA-0013, 2008-Ohio-5145, ¶ 33 citing *Dardinger v. Anthem Blue Cross & Blue Shield*, 98 Ohio St.3d 77, 2002-Ohio-7113, 781 N.E.2d 121. With the goal of punishment and deterrence, we review the *Gore* guideposts to determine if the punitive damage award was excessive.

{¶43} The first is the degree of reprehensibility of the defendant's conduct. It is "the most important indicium of the reasonableness of a punitive damage award." *Barnes* at ¶ 33 citing *Gore* at 575. "A review of reprehensibility includes consideration of whether (1) 'the harm caused was physical as opposed to economic,' (2) 'the tortious conduct evinced an indifference to or a reckless disregard for the health or safety of others,' or (3) 'the target of the conduct had financial vulnerability,' (4) 'the conduct involved repeated actions or was an isolated incident,' and (5) 'the harm was the result of intentional malice, trickery, or deceit, or mere accident.'" *Barnes* at ¶ 33 citing *State Farm* 538 U.S. at 419. The harm in this case was physical and emotional, resulting in T.P.'s economic harm in missing work. The trial court determined Weiss acted with intentional malice and trickery in putting GHB in T.P.'s drink and then engaging in sexual intercourse with her when she was in a substantially impaired state.

{¶44} The second guidepost and the "'most commonly cited indicium of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff.'" *Barnes* at ¶ 34 citing *Gore*, 517 U.S. at 580. In this case, compensatory damages award was $17,313.34 and the punitive damages award was $340,000 -- this is a ratio of 20-to-one. The United States Supreme Court rejected a mathematical formula to assess the reasonableness of punitive damage awards. It recognized that "'low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages.'" *Barnes* at ¶ 34 citing *Gore*, 517 U.S. at 582. The Ohio Supreme Court has allowed a punitive damage award with

a ratio of 6,250-to-one damages ratio to stand, but the Court has invalidated a 20-to-one ratio. *Barnes* at ¶ 34 quoting *Wightman v. Consol. Rail Corp.*, 86 Ohio St.3d 431, 715 N.E.2d 546 (1999); *Dardinger v. Anthem Blue Cross & Blue Shield*, 98 Ohio St.3d 77, 2002-Ohio-7113, 781 N.E.2d 121. In this case, the trial court did not refer to the punitive damage award in the terms of a ratio, but rather defined it as a matter of years. The trial court stated, "[t]he Court finds by clear and convincing evidence that the Plaintiff not only suffered from the reality that she had unknowingly been sexually violated but that by its very nature the Defendant's conduct will 'haunt' the Plaintiff for the remainder of her life." It then awarded punitive damages in the amount of $17,000 for 20 years, which totals $340,000.

{¶45} The final guidepost involves "'comparing the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct.'" *Barnes* at ¶ 36 citing *Gore*, 517 U.S. at 583. In Weiss's criminal case for sexual battery, the trial court sentenced Weiss to six months in jail and imposed a $7,500 fine. Weiss cited two cases to show the punitive damages award was excessive in comparison to the present case. In *Showalter v. Oberlin*, 6th Dist. No. 89WM000010, 1991 WL 87097 (May 24, 1991), a jury awarded a woman $75,000 in compensatory damages and $500,000 in punitive damages against her step-father defendant for two years of sexual abuse. The court of appeals affirmed the judgment. In *Herald v. Hood*, 9th Dist. No. 15986, 1993 WL 277541 (July 21, 1993), the jury awarded a sexual abuse victim $150,000 in compensatory damages and $5,000,000 in punitive damages. The victim had been abused by her uncle for 12 years. On appeal, the court reduced the punitive damage award to $2,500,000. Weiss argues in those

cases, the sexual assault was more egregious fact pattern than that of the present case. Our review of Ohio case law did not produce any comparable factual situations to the present one.

{¶46} "'Low compensatory damages and high punitive damages assessed by a jury are not in and of themselves cause to reverse the judgment or to grant a remittitur, since it is the function of the jury to assess the damages and, generally, it is not for the trial or appellate court to substitute its judgment for that of the trier of fact. A large disparity, standing alone, is insufficient to justify a court's interference with the province of the jury.'" *Wightman v. Consol. Rail Corp.*, 86 Ohio St.3d 431, 438, 715 N.E.2d 546 (1999), quoting *Villella v. Waikem Motors, Inc.*, 45 Ohio St.3d 36, 40, 543 N.E.2d 464 (1989). In this case, the trial court considered the facts and assessed the damages. Under the guidelines of *Gore*, *State Farm*, and *Barnes* as applied to the facts of this case, we cannot say the punitive damages in the amount of $340,000 were excessive so as to violate Weiss's due process protections. "There is no magic formula for determining the proper amount of punitive damages. Rather, the amount that should be awarded is the amount that best accomplishes the twin aims of punishment and deterrence as to that defendant. 'We do not require, or invite, financial ruination of a defendant that is liable for punitive damages. While certainly a higher award will always yield a greater punishment and greater deterrent, the punitive damages award should not go beyond what is necessary to achieve its goals. The law requires an effective punishment, not a draconian one.' *Dardinger*, 2002-Ohio-7113, 98 Ohio St.3d 77, 781 N.E.2d 121, at-178." *Winner Trucking, Inc. v. Victor L. Dowers & Assoc.*, 2nd Dist. No. 1695, 2007-Ohio-3447, ¶ 39.

**CONCLUSION**

{¶47} The first and second Assignment of Errors of Defendant-Appellant William P. Weiss, Jr. are overruled.

{¶48} The judgment of the Delaware County Court of Common Pleas is affirmed.

By: Delaney, P.J.,

Hoffman, J. concur;

Farmer, J. dissents.

_____
HON. PATRICIA A. DELANEY


_____
HON. WILLIAM B. HOFFMAN


_____
HON. SHEILA G. FARMER


PAD:kgb

*Farmer, J., dissents*

**{¶49}** I respectfully dissent from the majority's view that Assignment of Error I should be denied.

**{¶50}** Although I concur with the trial court's analysis that appellant's criminal conduct and its long term repercussions goes beyond the pale, I would find the arbitrary amount assessed by the trial court to be an abuse of discretion.

_____

HON. SHEILA G. FARMER