[Cite as *Burns v. Adams*, 2014-Ohio-1917.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| MICHELE BURNS, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 12CA3508 |
| | : | |
| vs. | : | |
| | : | |
| JACK ADAMS,[1] | : | <u>DECISION AND JUDGMENT</u> |
| | : | <u>ENTRY</u> |
| Defendant-Appellant. | : | **Released: 05/02/14** |

<u>APPEARANCES</u>:

James H. Banks, Dublin, Ohio, for Appellant.

Stanley C. Bender, Portsmouth, Ohio, Bruce W. MacDonald and Darya Thompson, McBrayer, McGinnis, Leslie, & Kirkland, Greenup, Kentucky, for Appellee.

McFarland, J.

{¶1} Jack Adams, (Appellant), appeals the judgment of the Scioto County Common Pleas Court, entered on September 12, 2012, subsequent to a jury trial held on damages only. Pursuant to the jury's verdicts, judgment was entered in favor of plaintiff Michelle Burns, as administrator of the estate of Bobby Burns, and against defendant Jack Adams in the amounts of one million, two hundred thousand dollars ($1,200,000.00) for compensatory damages and eight million one hundred thousand dollars ($8,100,000.00) for punitive damages. Appellant

---

[1] During the trial court proceedings, Appellant was inadvertently identified on the pleadings as "Jack Adams." His correct name is "John M. Adams." The trial court issued an entry to correct the pleadings to reflect Appellant as "John Adams." However, the appellate pleadings continue to identify Appellant as "Jack Adams."

submits the following assignments of error: (1) that the trial court erred in the admission of evidence such to adversely affect the substantial rights of the defendant; (2) that the trial court's rulings at trial denied the defendant a fair trial and deprived him of due process, such as to require reversal of the judgment against him; and (3) that the punitive damage award was excessive and contrary to law. Having reviewed the entire record, we find the trial court did not err with regard to the admission of evidence. We also find Appellant was not denied a fair trial or deprived of due process, such as to require reversal of the judgment against him. Finally, we find the punitive damage award was not excessive and contrary to law. As such, we overrule Appellant's three assignments of error and affirm the judgment of the trial court.

## FACTS

{¶2} Appellant was convicted after a jury trial in the Scioto County Court of Common Pleas of one count of murder, one count of aggravated burglary, and two counts of kidnapping, all with firearm specifications. The facts underlying his convictions are set forth fully in *State v. Adams,* 4th Dist. Scioto Nos. 04CA2959, 05CA2986, 2009-Ohio-6491.

{¶3} The shorter version is Plaintiff-Appellee Michelle Burns, ("Appellee"), was a patient of Appellant, a doctor of psychiatry. Appellee had depression problems as early as age 32-33 and, later, some mental health issues ostensibly

associated with the fact that she was diagnosed with cancer and had subsequent radical surgeries. While Appellant was treating Appellee for her later mental health issues, prescribing her antidepressants and narcotic pain medication, they engaged in a sexual relationship. Sometime after Appellee ended the relationship, Appellant entered the Burns' home by stealth and killed Bobby Burns, Appellee's husband. After pointing a gun at Appellee, he fled the scene and kidnapped two females at gunpoint, forcing them to drive him across the state line into Kentucky. Appellant was apprehended shortly thereafter.

{¶4} Appellant appealed his criminal convictions, raising various issues, and this court remanded Appellant's case for resentencing. Appellant also appealed the new sentence in *State v. Adams,* 4th Dist. Scioto No. 10CA3391, 2012 WL 245893. An appeal to the Supreme Court of Ohio was denied in April 2010.

{¶5} Appellee, as administrator of the estate of Bobby Burns, filed a wrongful death action against Appellant in June 2005. The civil case was placed on hold while Appellant appealed his criminal convictions. The wrongful death case was eventually tried to a duly empaneled and sworn jury on August 14, 2012. Appellee testified as to the events preceding her husband's murder, which occurred over a period of several years. Appellee also presented deposition testimony from an economist, David Boyd, on the issue of economic damage as a result of Bobby

Burns' death.[2]  Appellant did not testify nor did he present any evidence in defense

of the wrongful death complaint or on his counter-claim.[3]  As indicated above, at

the conclusion of the one-day trial, the jury awarded large verdicts for

compensatory damages and punitive damages.  This appeal followed.

{¶6} Where relevant, additional facts are set forth below.

ASSIGNMENTS OF ERROR

I.  THE TRIAL COURT ERRED IN THE ADMISSION OF
EVIDENCE SUCH TO ADVERSELY AFFECT THE
SUBSTANTIAL RIGHTS OF THE DEFENDANT.

A.  STANDARD OF REVIEW

{¶7} The admission or exclusion of evidence is within the sound discretion

of the trial court, and the trial court's decision to admit or exclude such evidence

cannot be reversed absent an abuse of discretion.  *State v. Craft,* 4th Dist. Athens

No. 97 CA 53, 1998 WL 255442, * 7; *State v. Combs,* 62 Ohio St.3d 278, 581

N.E.2d 1071 (1991); *State v. Finnerty*, 45 Ohio St.3d 104, 543 N.E.2d 1233

(1989); *State v. Sage,* 31 Ohio St.3d 173, 510 N.E.2d 343 (1987); Evid.R. 402.  We

note that the term "abuse of discretion" connotes more than an error of law or

judgment; it implies that the court's attitude is unreasonable, arbitrary or

---

[2] David Boyd, PhD., testified that the projected loss to the estate for Bobby Burns' death at age 43, was $594, 528.22. After reviewing Bobby Burns' work history, earnings prior to death, fringe benefits received prior to death, age at death, life expectancy, personal consumption of benefits, and educational back ground, Dr. Boyd gave his testimony to a reasonable degree of economic certainty.

[3] The substance of Appellant's counterclaim was the allegation that Appellee shot and killed her husband and caused Appellant to be wrongfully convicted.  Appellant also alleged malicious prosecution and abuse of process, and intentional infliction of emotional distress.

unconscionable. *Craft, supra,* citing *State v. Xie,* 62 Ohio St.3d 521, 584 N.E. 2d 715 (1992); *State v. Montgomery,* 61 Ohio St.3d 410, 575 N.E.2d 167 (1991). When applying the abuse of discretion standard of review, an appellate court is not free to merely substitutes its judgment for that of the trial court. *Craft, supra,* citing *In re Jane Doe 1,* 57 Ohio St.3d 135, 566 N.E.2d 1181 (1991).

## B.  LEGAL ANALYSIS

{¶8} Under the first assignment of error, Appellant first sets forth this issue: whether the trial court's refusal to permit Defendant-Appellant Adams to present evidence as to liability constitutes reversible error? Appellant argues the trial court twice denied Appellee's motion for summary judgment on the issue of liability and then refused to permit Appellant to submit any evidence as to liability, finding that the trial was being held only to consider damages.  In response to Appellant's first issue, Appellee contends the trial court did not err in its discretion when it determined that the evidence of Appellant's murder conviction was sufficient to meet the liability element in the case at bar based on R.C. 2307.60.  R.C. 2307.60, civil action for damages for criminal act, provides in pertinent part:

> "(B)  A final judgment of a trial court that has not been reversed on appeal or otherwise nullified, set aside, or vacated, entered after a trial or upon a plea of guilty, but not upon a plea of no contest or the equivalent plea from another jurisdiction, that adjudges an offender guilty of an offense of violence punishable by death or imprisonment in excess of one year, when entered as evidence in any subsequent civil proceeding based on the criminal act, shall preclude the offender from denying in the subsequent civil proceeding any fact essential to

sustaining that judgment, unless the offender can demonstrate that extraordinary circumstances prevented the offender from having a full and fair opportunity to litigate the issue in the criminal proceeding, or other extraordinary circumstances justify affording the offender the opportunity to relitigate the issue. The offender may introduce evidence of the offender's pending appeal of the final judgment of the trial court, if applicable, and the court may consider that evidence in determining the liability of the offender."

{¶9} To clearly address Appellant's argument, we must point out the context. The trial transcript reflects defense counsel brought up, just prior to the commencement of trial, these issues: (1) questioning Appellee as to her medical treatment for multiple personality disorder and (2) questioning her as to a settlement received from Marshall University. Eventually in the discussion, the trial court stated: "We're not going to get into retrying the case. So the case has been tried by a jury of his peers and so we're not going to get into the facts." He's not allowed to get up and say "He didn't do it" now. Appellant's counsel responded: "Well, Your Honor, in your entry for summary judgment your ruling was a little different, so I'm just saying - -." The transcript reflects counsel's voice trailed off. Appellant did not lodge and objection to the trial court's implicit ruling that Appellant could not deny liability for Bobby Burns' death during the damages trial.

{¶10} The trial court then read the relevant statute, R.C. 2307.60 and questioned whether the criminal conviction had been appealed. Appellant's counsel responded that it had been appealed all the way to the Supreme Court of

Ohio.  At this point, the transcript does not reveal further discussion with the trial court or argument or objection by Appellant's counsel as to the issue of the admission of evidence of liability.  There are also three instances during voir dire and one instance during opening statement when Appellee's counsel states the trial was only on damages.  At no time did Appellant lodge an objection.

{¶11} The transcript further reveals when Appellee rested, counsel offered into evidence the nunc pro tunc sentencing entry, certified by the Scioto County Clerk of Courts, evidencing Appellant's multiple convictions and multiple prison terms.  Appellant's counsel objected on the basis that there was no person to testify as to authentication.  Appellee argued the entry was self-authenticating and also admissible under R.C. 2307.60.   The trial court admitted the entry of conviction.  There was no further objection by Appellant as to the issue of presentation of liability evidence.  Counsel objected to the admission of the entry of conviction solely on the basis of authentication.[4]  As such, we will review Appellant's argument that he was not permitted to present evidence as to liability under a plain error standard of review.

{¶12} It is well-established that where no timely objection was made, plain error is recognized in a civil case is not favored and may only be applied in an "extremely rare case involving exceptional circumstances where error, to which no

---

[4] In his brief, Appellant makes no argument with regard to authentication of the entry of conviction.

objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *West v. Curtis,* 7th Dist. Belmont No. 08 BE 28, 2009-Ohio-3050, ¶ 86, quoting *Gable v. Gates Mills,* 103 Ohio St.3d 449, 2004-Ohio-5719, 816 N.E.2d 1049, ¶ 43, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122-123, 679 N.E.2d 1099 (1997). See, also, *Werden v. Children's Hospital Medical Center,* 1st Dist. Hamilton No. C-040889, 2006-Ohio-4600, ¶ 17.

{¶13} However, while the judge has discretion to admit or exclude evidence based upon the factual circumstances presented, his application of those facts to the rules of evidence is a question of law we review de novo. *State v. Cody*, 8th Dist. Cuyahoga No. 77427, 2002-Ohio-7055, ¶ 10. See *Calderon v. Sharkey,* 70 Ohio St.2d 218, 222-223, 436 N.E.2d 1008 (1982); *Rohde v. Farmer,* 23 Ohio St.2d 82, 262 N.E.2d 685 (1970), paragraphs one and two of the syllabus. As such, we must review the trial court's application of the facts to the rules of evidence, via the implicit ruling that Appellant's conviction precluded denial of liability. Again, we will review the ruling under a plain error standard of review since Appellant did not voice objection.

{¶14} Appellee points out Appellant was convicted under R.C. 2903.02 which provides "No person shall purposely cause the death of another…." Appellant argues "causing the death of" may be construed in various ways and no

evidence was presented as to the manner of means by which the defendant "caused" the death of Bobby Burns because Appellant was not permitted to rebut Appellee's testimony. Appellant further argues that the case at bar presents "extraordinary circumstances" which prevented the offender from having a full and fair opportunity to litigate the issue in the criminal proceeding.

{¶15} The issue raised here has necessitated a look at the principles of res judicata and issue preclusion, as well as the law of other jurisdictions. The collateral-estoppel effect of a criminal federal conviction was discussed by the Franklin County Common Pleas Court in *Blackwell v. Gorman,* 142 Ohio Misc. 2d 50, 870 N.E.2d 1238, 2007-Ohio-3504. The court stated:

{¶16} "The finality that ought to attach to a judgment of conviction in a criminal case was recognized in *State v. Szefcyf,* 77 Ohio St.3d 93, 671 N.E.2d 233 (1996). The syllabus paragraph prepared by the court ruled:

> 'Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.'"

{¶17} The doctrine of issue preclusion, also known as collateral estoppel, holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be draw into question in a subsequent action

between the same parties or their privies, whether the cause of action in the two actions be identical or different. *Fort Frye Teachers Assoc. v. SERB,* 81 Ohio St.3d 392, 1998-Ohio435, 692 N.E.2d 140, ¶¶ 3 and 4.

{¶19} This court declined to hold that a criminal conviction had collateral estoppel effect in a tort action in *Phillips v. Rayburn,* 113 Ohio App.3d 374, 680 N.E.2d 1279 (4th Dist.1996). There we reviewed the parties' arguments and found that the advantages gained by preclusion did not outweigh the risks inherent in allowing a criminal conviction to bind a defendant in a subsequent civil suit based on the same conduct. *Id.* at 10. While recognizing that our position was somewhat contrary to the trend in federal court, we further observed:

> "Procedural and discovery differences between the criminal and civil forums coupled with the defendant's dilemma over whether to testify in his own behalf or present any defense at the criminal trial make preclusion in this instance a precarious, and we believe, unwise practice. The conviction is, of course, valuable probative evidence to an aggrieved plaintiff and should be admissible….In the interest of fairness, however, we feel the defendant to the tort must be afforded an opportunity to present evidence rebutting or explaining the criminal conviction." *Id.* at 10.

{¶20} The trend we then recognized in federal court seems to have been adopted in some other state court decisions as well. In *Hanover Insurance Company v. Hayward,* 464 A.2d 156, 1983 Me, LEXIS 776, the Supreme Judicial Court of Maine denied the cross-appeal of the defendant which challenged the

Superior Court's ruling that for purposes of the subsequent civil action, his prior

conviction for arson was conclusive proof of all facts necessarily adjudicated in the

earlier criminal conviction.  The Supreme Judicial Court noted:

> "[T]he jury must have concluded beyond a reasonable doubt that the
> Defendant burned his house with the intent to collect insurance
> proceeds for the loss caused by the fire.  There is no reason that a
> defendant, having vigorously asserted a defense and been adjudicated
> guilty on a beyond-a-reasonable-doubt standard, should be allowed to
> relitigate the issues previously determined.  'Principles of finality,
> certainty, and the proper administration of justice suggest that a
> decision once rendered should stand…' *Hossler,* 403 A.2d 762, 769
> (Me. 1979).  We find no error in the Superior Court's ruling that the
> Defendant's prior criminal conviction conclusively established the
> Defendant's burning of the structure with the intent to collect
> insurance proceeds."

{¶21} In its holding, the Superior Judicial Court noted the *Hayward* case

was distinguishable from another decision involving insurance, *Patrons-Oxford*

*Mutual Insurance Co. v. Dodge*, 426 A.2d 888(Me 1981), because in the *Hayward*

case, there was a complete identity between an issue adjudicated at the prior

criminal proceedings—the Defendant's intentional burning of his house to collect

insurance thereon—and an issue sought to be established in the subsequent civil

trial.  In *Patrons-Oxford*, in the defendant's criminal trial, the defendant was

convicted of aggravated assault. Under the relevant statute, the jury could have

found the defendant guilty if he "recklessly" caused bodily injury.  In the

subsequent civil action, the insurance company sought a declaratory judgment that

the defendant's conduct was not covered by its insurance policy.  The policy's

bodily injury exclusion only excluded conduct that was intended or expected. It did not exclude injury caused recklessly. Because the issue the insurance company sought to establish in the civil action differed from the issue actually adjudicated in the earlier criminal prosecution, the Superior Court declined to allow the insurance company to use collateral estoppel offensively against the defendant. *Hanover v. Hayward, supra,* at fn. 8.

{¶22} More recently, in *Stewart v. Bader,* 154 N.H. 75, 907 A.2d 931 (2006), the defendant appealed the judgment in favor of the plaintiff, administrator of the estate in the plaintiff's wrongful death action. In 1998, a jury convicted the defendant of first-degree murder. The jury found the defendant purposely caused the death of his former wife by shooting her in the head. The defendant was sentenced to life in prison without the possibility of parole.

{¶23} On appeal, the defendant intended the trial court erred when it ruled that under the doctrine of collateral estoppel, his murder conviction precluded him from arguing that he did not murder his wife. Regarding the collateral estoppel argument, the Supreme Court of New Hampshire held:

> " 'Spurred by considerations of judicial economy and a policy of certainty and finality in our legal system, the doctrines of res judicata and collateral estoppel have been established to avoid repetitive litigation so that at some point litigation over a particular controversy must come to an end.' *Cook v. Sullivan,* 149 N.H. 774, 777, 829 A.D.2d 1059(2003) (quotation omitted). The doctrine of collateral estoppel bars a party to a prior action, or a person in privity with such

a party, from relitigating any issue or fact actually litigated and determined in the prior action. Id. at 778.

       * * *

For collateral estoppel to apply, three basic conditions must be satisfied: (1) the issue subject to estoppel must be identical in each action; (2) the first action must have resolved the issue finally on the merits; and (3) the party to be estopped must have appeared [ * **11] as  a party in the first [*81] action, or have been in privity with someone who did so. Id.   'These conditions must be understood, in turn, as particular elements of the more general requirement, that a party against whom estoppel is pleaded must have had a full and fair prior opportunity to litigate the issue or fact in question.' Id. (quotation omitted)."

{¶24} In the *Stewart* case, the defendant argued his conviction had no preclusive effect because he did not testify at his criminal trial.  He argued because he chose not to testify, he was deprived of a full and fair opportunity to litigate his guilt or innocence.  The New Hampshire Supreme Court, citing an earlier case, stated:

"In *Hopps v. Utica Mutual Insurance Co.,* 127 N.H. 508, 511, 506 A.2d 294 (1985), we held that given modern concepts of collateral estoppel:

'[T]here is no reason in principle why an earlier criminal judgment should not preclude a party to the criminal prosecution from relitigating an issue of fact in a later civil proceeding, if that party enjoyed a full and fair opportunity to litigate the issue [ ***12] in the first instance.  In fact, there is a stronger rationale for applying collateral estoppel against a former criminal defendant that for applying it against a party to a prior civil case, since the criminal defendant has had the benefit of the presumption of innocence and the State's obligation to prove any fact essential to the conviction beyond a reasonable doubt.' "

{¶25} In addressing the defendant's argument about his lack of opportunity to fully litigate the case, based on his failure to testify at trial, the New Hampshire Supreme Court looked to an Iowa case, *Dettman v. Kruckenberg,* 613 N.W.2d 238, 2000 Iowa Sup. LEXIS 127. There, Dettman, as executor of his wife's estate, brought a wrongful death action after his wife died when her vehicle was struck by an intoxicated driver, Kruckenberg. A co-defendant in the case filed a pre-trial motion under Iowa Rule of Evidence 104(a) asking the court to exclude at trial any evidence offered by the defendant that another person was driving the Kruckenberg's vehicle. Specifically, the motion cited Iowa Code 707.6(A)(1), that Kruckenberg's criminal case conviction of vehicular homicide precluded litigation of the identity of the driver in the wrongful death action. The trial court sustained the motion. The district court also concluded that issue preclusion principles applied.

{¶26} On appeal to the Supreme Court of Iowa, Kruckenberg raised the issue of whether a criminal case conviction was preclusive as to issues raised in a subsequent civil action brought against the criminal defendant. The Court first noted that evidence of Kruckenberg's conviction would probably have been admissible at the civil trial over a hearsay objection as an exception to the hearsay rule.

{¶27} The Supreme Court also looked to the writings of Professor Allan D.

Vestal, a well- respected authority on issue preclusion principles.[5] Referencing

Professor Vestal's work, the Supreme Court noted:

> "The primary inquiry is whether there was an opportunity and
> incentive to fully litigate the issue. If so, it follows that preclusive
> effect can be given to the earlier decision. Second, the precise issue
> faced and settled in the first proceeding must be identified…Third, the
> courts must recognize the different standards of proof required in civil
> and criminal proceedings…Fourth, certain overriding societal
> considerations apply in some situations. When such interests are
> involved, the doctrine of preclusion may be forced to give way. Fifth,
> in the application of preclusion, the rights of individuals must be
> protected…"

{¶28} The New Hampshire Supreme Court ultimately held that the

 district court properly decided that the requirements of issue preclusion were

satisfied.[6] "In addition to these requirement [of issue preclusion], 'either (1) the

parties in both actions must be the same (mutuality of parties), or (2) there must be

privity between the party against whom issue preclusion is invoked and against

whom the issue was decided in the first litigation.'" *Kruckenberg, supra*, quoting

*Brown,* 558 N.W.2d at 163. A "privy" means "one who, after rendition of the

judgment, has acquired an interest in the subject matter affected by the judgment

---

[5] Professor Vestal's work was discussed by Ruth Bader Ginsburg, *The Work of Professor Allan Delker Vestal,* 70 Iowa L. Rev. 13 91984). Professor Vestal also served as an adviser throughout preparation of the Restatement (Second) of Judgments. See David L. Shapiro, *Should a Guilty Plea Have a Preclusive Effect*? 70 Iowa L. Rev. 27, 27, n.1 (1984).

[6] The principle of the application of the doctrine of issue preclusion in a similar context was recently reaffirmed in *Traudt v. Roberts,* 2013 DNH 94, 2013 U.S. Dist. LEXIS 98363.

through or under one of the parties, as by inheritance, succession, or purchase." *Id.*

(quoting *Goodby v. Derby*, 189 N.W.2d 909, 914 (Iowa 1971)).[7]

{¶29} The New Hampshire Supreme Court held:

"First, the jury in the criminal case found [Kruckenberg] guilty beyond a reasonable doubt of the charge of vehicular homicide. Implicit in the jury's finding was that Michael was driving the Kruckenberg vehicle at the time it collided with [Laurie] Dettman's vehicle. Second, Michael's criminal conviction was only used in the present civil action for purposes of conclusively establishing that Michael was driving the Kruckenberg vehicle at the time of the accident. Additionally, the driver issue was raised and litigated in the criminal trial and on appeal, it was material and relevant to the disposition of the criminal action as an essential element of the crime, and determination of the issue was necessary and essential to the judgment entered in the criminal case. We also agree with the trial court that Michael had a full and fair opportunity to litigate the driver issue in the criminal case and had every incentive to do so. In fact, Michael was serving his prison term at the time of the civil case trial. Additionally, Michael's decision not to testify in the criminal case was presumably made on the assumption that he would benefit thereby. Any error in this trial strategy, however, no more defeats the preclusive effect of his criminal conviction in the civil case than the failure of a litigant to introduce relevant available evidence in any other situation."

{¶30} We decided *Phillips v. Rayburn* in August, 1996. The version of

R.C. 2307.60 in effect at that time read as follows:

"Anyone injured in person or property by a criminal act has, and may recover, full damages in a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary

---

[7] This definition of "privy" is also contained in Black's Law Dictionary, Abridged Sixth Edition, 1991.

damages if authorized by section 2315.21 or another section of the Revised Code. No record of a conviction, *unless obtained by confession in open court,* shall be used as evidence in a civil action brought pursuant to this section." (Emphasis added.).

{¶31} The language of R.C. 2307.60 has since been revised, as we have indicated above, to allow that "a final judgment of a trial court… entered after a trial or upon a plea of guilty, but not upon a plea of no contest…" shall preclude the offender from denying in a subsequent civil proceeding any fact essential to sustaining that judgment. This is a significant difference.

{¶32} In the case at bar, Appellee introduced the evidence of Appellant's conviction. Appellant was convicted beyond a reasonable doubt of "purposely" causing the death of another. Pursuant to R.C. 2901.22, a person acts "purposely" when it is his intention to cause a specific result. In the wrongful death trial, the jury was instructed they had to determine if Appellant intentionally caused or contributed to the death of Bobby Burns before they could proceed to consider damages. The issue in the criminal trial was identical to that presented in the civil trial. The issue was relevant and material to disposition of the prior proceeding.

{¶33} And, although Appellee was not a party to the criminal trial, the Ohio Supreme Court has suggested that strict mutuality of parties may be relaxed in the interest of justice. *Phillips v. Rayburn, supra,* at ¶8, citing *In re Gilbraith,* 32 Ohio St.3d 127, 131, 512 N.E.2d 956, 961 (1987). However, we conclude that Appellee

functioned as a privy in that she acquired an interest in the subject matter affected by the criminal judgment.

{¶34} We further observe that the first action has been resolved on the merits. Appellant was convicted of murder and has exhausted the appeals process. Despite his argument to the contrary, Appellant had the opportunity to fully and fairly litigate his conviction. The strategic choice not to testify does not automatically mean a litigant has not had a fair and full opportunity. In *Dettman v. Kruckenberg, supra,* the court noted that the decision not to testify was presumably made on the assumption that he would benefit thereby. Any error in the trial strategy did not defeat the preclusive effect of the criminal conviction. See also, *Stewart v. Bader, supra.* The *Blackwell* court also commented:

> "A full and fair opportunity to be heard was plainly afforded Blackwell in federal court. The mere fact that it might have been fuller or fairer from Blackwell's personal vantage point, using hindsight, simply is not the test."

{¶35} We are not convinced by Appellant's argument that extraordinary circumstances prevented him from having full and fair opportunity to litigate his claim of innocence. Appellant bases this claim on his decision not to testify in the criminal trial. That was a strategic choice on his part. He was found to be proven

guilty beyond a reasonable doubt. This court affirmed his convictions, finding the evidence of guilt to be overwhelming.[8]

{¶36} In summary, we find no plain error occurred with regard to the trial court's implicit ruling that Appellant was precluded from denying liability. The trial court's decision did not affect the basic fairness and integrity of Appellant's civil trial. As such, the trial court did not err and abuse its discretion by refusing Appellant to present evidence of liability.

{¶37} Under the first assignment of error, Appellant also argues he was not permitted to cross-examine Appellee as to Appellee's mental health history, association with defendant, and facts concerning the murder. He contends these rulings substantially prejudiced him.

{¶38} We note the trial transcript reflects just prior to the start of trial, Appellant's counsel requested to ask her about medical conditions, specifically regarding her treatment for multiple personality disorder, and the judgment she received from Marshall University. As indicated in our discussion above, however, those requests spiraled into a discussion about whether or not evidence regarding liability would be permitted. Appellant's counsel did not request a definitive ruling on any of his requests at that time.

---

[8] See *State v. Adams,* 4th Dist. Scioto No. 04CA2959, 05CA2986, 2009-Ohio-6491, ¶¶42-43.

{¶39} During direct examination, Burns testified she worked consistently, but took off at times due to depression.  She also testified as to her physical and mental health issues.  Burns testified Appellee placed her on psychiatric medicines and pain medication for multiple surgeries.  Burns acknowledged that she and Appellant had an inappropriate relationship.  Burns also testified as to the events which occurred on the night in July 2003 when her husband was killed.  The following are excerpts from the cross-examination:

Q.      Did you file against Marshall University?

A.      I believe Marshall, and Cabell Huntington, and your client.

Q.      And did you receive a settlement for that?

{¶40} At this point, Appellee's counsel objected.  Counsel engaged in sidebar discussion.  Appellant's attorney argued that Appellee had talked about her mental issues, depression, and had opened the door, yet he was precluded.  He argued the jury had the right to know how extensive she was suffering.  The parties further discussed the various issues, with the trial court eventually ruling that Appellant could question her as to her funds she had to live on immediately after the murder.  Counsel did not further argue about cross-examination as to mental issues. Cross-examination resumed.  Eventually, Appellant inquired:

Q.      There wasn't, so you didn't receive a significant amount of money
        from Marshall University?

Mr. Bender: Objection.

The Court:    Sustained.

{¶41} In sidebar conference, Appellant's counsel argued that the jury was going to be sympathetic about her and the incidents she had testified to.  His objective was to give the jury evidence by which they could consider that she contributed to her husband's death.  Appellant's counsel submitted that if the jury knew of her involvement, it might affect her credibility and cause the jury not to make such large awards.

{¶42} When questioning resumed, Appellant then questioned Appellee about her treatment for depression, the length of treatment, the fact that the relationship became intimate.  He also asked her if she was being treated for multiple personalities and if she sent Appellant emails using names of the various personalities.  The trial court allowed this cross-examination.

{¶43} Appellant declined to present any evidence.  Counsel made an objection as follows at page 109 of the transcript:

> "I just want to clear that- - my objections for the record that I weren't going to be able to question her about any emails, about her medical conditions or treatment from the doctor or put on any evidence to that effect.  So with that, I have no evidence.  So I would rest."

{¶44} The Supreme Court of Ohio has stated that the standard of review

when considering evidentiary rulings, including rulings limiting the scope of cross-examination, is whether the trial court abused its discretion. *Kleinman v. Chrysler Motor Corp.* 4th Dist. Scioto No. 94 CA 2234, 1995 WL 329578, citing *Ede v. Atrium South OB-GYN, Inc.,* 71 Ohio St.3d 124, 642 N.E. 2d 365 (1994). A reviewing court should not reverse the trial court's ruling unless the trial court's attitude is unreasonable, arbitrary or unconscionable. *Id.* See, also, *Calderon v. Sharkey,* 70 Ohio St.2d 218, 436 N.E.2d 1008 (1982); *O'Brien v. Angley,* 63 Ohio St.2d 159, 407 N.E.2d 490 (1980).

{¶45} Appellant now argues the trial court denied him the right to effectively cross-examine Appellee at trial in that it could not use her medical records and information obtained in the patient/physician relationship. Appellant contends the excluded medical records would show she was the person who actually killed her husband. We do not see any place in the trial transcript where Appellant proffered the medical records. Evid.R. 103(A)(2) provides:

> (A) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

> (2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. * * *

{¶46} An offer of proof serves the salutary purpose of assisting the appellate tribunal in determining whether the lower court's exclusion of certain evidence

was prejudicial to a 'substantial right' of the complaining party. *Berneal Properties, Inc. v. Loft Painting Co., Inc.,* 4th Dist. Scioto No. 96 CA 2432, 1997 WL 147533, *4, citing *State v. Gilmore,* 28 Ohio St.3d 190, 503 N.E.2d 147 (1986), syllabus. Inasmuch as Appellant did not proffer the medical records at the civil trial, we do not find abuse of discretion on the part of the trial court.

{¶47} Frankly, Appellant's argument that the trial court did not allow him to cross-examine Appellee as to her medical/mental health history is simply not completely accurate. The trial transcript reveals that Appellant actually did inquire as to whether or not she was diagnosed with multiple personality disorder. Appellant also inquired about the sexual relationship between Appellant and Appellee. Counsel may not have inquired extensively about her medical health history, but the transcript reveals counsel's questioning was not interrupted by objections at this point. We will not second-guess counsel's strategic choice not to question Appellee in a more in-depth manner. Furthermore, the transcript reveals cross-examination as to the sexual relationship was vigorous. Appellant was able to place Appellee's credibility at issue. We find no abuse of discretion with regard to the trial court's limitation of the scope of cross-examination of Appellee on these topics.

{¶48} Appellant also argues he was not allowed to cross-examine Appellee regarding facts concerning the murder. However, based on our resolution of

Appellant's first issue presented for review, above, we do not find abuse of discretion on the part of the trial court.

{¶49} Appellant also argues the trial court's refusal to permit Appellant to question Appellee as to the judgments, settlements, and insurance proceeds she received as a result of her husband's death, to challenge her credibility, was prejudicial. It appears, however, that Appellant did elicit responses from her regarding lawsuits filed against Marshall University, Cabell, and Appellant, which the jury heard. The jury also heard a question about a settlement from Marshall University. Despite sustained objections, the defense was able to implant the idea of other settlements or proceeds going to Appellee and to place her credibility at issue. We do not find the trial court abused its discretion with regard to the exclusion of this evidence.

{¶50} Finally, Appellant references the emails but does not argue at trial or in his brief what they would have shown. And again, he never proffered certain ones. The trial transcript actually demonstrates he briefly questioned Appellee about emails between Appellant and her. We do not find an abuse of discretion occurred.

{¶51} Finally, under the first assignment of error, Appellant contends that Appellee's closing arguments prejudiced him such as to require reversal of the judgment against him. Although Appellant lists this as an issue presented for

review on page three of his brief, he does not separately argue this issue under his assignment of error one argument set forth on pages 10-18.  Pursuant to App.R. 12(A)(2), the trial court may disregard an assignment of error presented for review if the party raising it fails to argue the assignment separately in the brief, as required under App.R. 16(A).  As such, we decline to address the issue presented at this juncture.  However, we will address Appellant's argument with regard to the propriety of closing arguments in assignment of error two below.

> II. THE TRIAL COURT'S RULINGS AT TRIAL DENIED THE
> DEFENDANT A FAIR TRIAL AND DEPRIVED HIM OF DUE
> PROCESS, SUCH TO REQUIRE REVERSAL OF THE
> JUDGMENT AGAINST HIM.

### A.  STANDARD OF REVIEW

{¶52} Under the second assignment of error, Appellant contends the trial court erred in its rulings with regard to cross-examination, provision of jury instructions, his motion for mistrial, and closing arguments.  As set forth fully under assignment of error one above, we review a trial court's rulings on the admission or exclusion of evidence under an "abuse of discretion" standard.

{¶53} With regard to jury instructions, a trial court's determination as to whether the evidence produced at trial warrants a particular instruction is reviewed for an abuse of discretion.  *Freedom Steel, supra,* at ¶ 10, citing *Matheson v. Morog,* 6th Dist. Erie No. E-00-017, 2001 Ohio App LEXIS 325, *19.  "A party must demonstrate not merely that the trial court's omission or inclusion of a jury

instruction was an error of law or judgment but that the court's attitude was unreasonable, arbitrary or unconscionable." *Freedom Steel, supra,* ¶10, quoting *Nails v. Perrin Asphalt,* 9th Dist. Medina No. 07CA0010-M, 2007-Ohio-6147, at ¶10. "And while an inadequate jury instruction that misleads the jury constitutes reversible error, 'misstatements and ambiguity in a portion of the instructions will not constitute reversible error unless the instructions are so misleading that they prejudicially affect a substantial right of the complaining party.'" *Peffer, supra*, at ¶46, quoting *Clements v. Lima Mem. Hosp.,* 3rd Dist. Allen No. 1-09-24, 2010-Ohio-602, ¶73, quoting *Haller v. Goodyear Tire & Rubber Co.,* 9th Dist. Summit Nos. 20669 and 20670, 2002-Ohio-3187, ¶19, quoting *Wozniak v. Wozniak,* 90 Ohio App.3d 400, 410, 629 N.E.2d 500 (9th Dist. 1993).

{¶54} The grant or denial of a motion for mistrial rests within the sound discretion of the trial court. *State v. Sage,* 31 Ohio St.3d 173, 182, 510 N.E.2d 343 (1987); *Ockenden v. Griggs,* 10th Dist. Franklin No. 07-AP-235, 2008-Ohio-2275, ¶11. A reviewing court may not substitute its judgment for that of the trial court absent an abuse of discretion. *Id.* A mistrial should only be granted where the party seeking the same demonstrates that he or she suffered material prejudice so that a fair trial is no longer possible. *Quellos v. Quellos,* 96 Ohio App.3d 31, 643 N.E.2d 1173 (8th Dist.1994), citing *State v. Franklin,* 62 Ohio St.3d 118, 580 N.E.2d 1 (1991).

## B. LEGAL ANALYSIS

{¶55} Under Appellant's second assignment of error, he presents as his first issue for review whether the trial court's ruling demonstrates bias against the defendant. Here, Appellant references his arguments previously set forth under assignment of error one, that the trial court's rulings as to liability and cross-examination of Burns substantially prejudiced Appellant and, coupled with the trial court's other rulings, demonstrated bias against the defendant such that he was deprived of due process and is entitled to reversal of the judgment against him. However, having found the trial court did not abuse its discretion with regard to the admission and exclusion of evidence and with its rulings as to the cross-examination of Appellee, we reiterate our finding that the trial court did not err and abuse its discretion.

{¶56} Appellant's second issue presented for review is whether the trial court's instruction that the trial below was on the issue of damages, only, such that the defendant could not examine plaintiff as to the facts of the death of her husband, demonstrate bias such to require reversal of the judgment against defendant Adams. In Appellant's brief, he allows one sentence on page 20 for his argument. Appellant contends the trial court permitted the jury to consider punitive damages without evidence to support the same, or, without permitting the defendant to effectively cross-examine Burns to negate the malice requirement.

However, Appellant does not direct us to any portion of the transcript where he alleges error occurred with regard to the provision of the jury instructions, as required by App. R. 12(A)(2) or 16(A)(3).

{¶57} We begin our analysis of the jury instructions provided herein by noting that jury instructions are required to state the law completely and correctly; instructions that are misleading constitute reversible error. *Freedom Steel v. Rorabaugh,* 11th Dist. Lake No. 2007-L-087, 2008 WL 754898, ¶10; *Groob v. Key Bank,* 108 Ohio St.3d 348,2006-Ohio-1189, 843 N.E.2d 1170, at ¶32. "A charge to the jury should be a plain, distinct and unambiguous statement of the law as applicable to the case made before the jury by the proof adduced." *Freedom Steel, supra,* quoting *Marshall v. Gibson,* 19 Ohio St.3d 10, 12, 482 N.E.2d 583 (1985), citing *Parmlee v. Adolph,* 28 Ohio St. 10, 1875 WL 219, paragraph two of the syllabus.

{¶58} Generally, a trial court should give requested instructions "if they are correct statements of the law applicable to the facts of the case." *Peffer v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 94356, 2011-Ohio-450, ¶45, quoting *Murphy v. Carrollton Mfg. Co.,* 61 Ohio St.3d 585, 591, 575 N.E.2d 828 (1991). However, jury instructions must be viewed in their totality. *Peffer, supra,* citing *Margroff v. Cornwell Quality Tools, Inc.,* 81 Ohio App.3d 174, 177, 610 N.E.2d 1006 (9th Dist.1991). If the totality of the instructions clearly and fairly

expresses the law, a reviewing court should not reverse a judgment based upon an error in a portion of a charge. *Id.* "A strong presumption exists in favor of the propriety of jury instructions." *Peffer, supra,* quoting *Schnipke v. Safe- Turf Installation Group, LLC*, 190 Ohio App.3d 89, 2010-Ohio-4173, 94, N.E.2d 993, ¶ 30, citing *Burns v. Prudential Sec., Inc.,* 167 Ohio App.3d 809, 2006-Ohio-3550, 857 N.E.2d 621, ¶ 41.

{¶59} The trial court actually gave these closing instructions before the jury retired to deliberate:

> "Plaintiff claims that Defendant wrongfully caused the death of Bobby burns, proximately causing compensatory damages to his heirs. Additionally, Plaintiff claims that Defendant's conduct in causing the death of Bobby Burns was intentional entitling her to punitive damages. Later I will explain compensatory and punitive damages to you…If you find by a preponderance of the evidence that the Defendant intentionally caused or contributed to cause the death of Bobby Burns, you will next consider damage- - the damages to the heirs."

We observe that Appellant did not lodge any objection to the jury instructions. To constitute plain error, the error must be so obvious on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection. *Peffer, supra,* at 61. See, *State v. Tichon,* 102 Ohio App.3d 758, 767, 658 N.E.2d 16 (9th Dist.1995). Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the allegedly improper actions. *Peffer, supra,* at 61. *State v. Waddell,* 75

Ohio St.3d 163, 166, 1996-Ohio-100, 661 N.E.2d 1043. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *Peffer, supra*, at 61. *State v. Phillips,* 74 Ohio St.3d 72, 83, 1995-Ohio-171, 656 N.E. 2d 643. We review the jury instructions, herein, under a "plain error" standard.

{¶60} We have previously determined that the trial court did not err with regard to its evidentiary rulings. The record shows the trial court actually gave an instruction that stated: "If you find by a preponderance of the evidence that the Defendant intentionally caused or contributed to the death of Bobby Burns, you will next consider damages…." Although the trial court indicated in chambers at the beginning of the trial that "we are not retrying the [criminal] case," the jury instructions provided, nevertheless, an option for the jury not to find that the defendant intentionally caused or contributed to the death of the Bobby Burns. Based on the above, we do not find plain error. We find no merit to Appellant's argument regarding the provision of the jury instructions.

{¶61} Appellant's next issue presented for review is whether the trial court's rulings as to cross-examination of Plaintiff constitute abuse of discretion and demonstrate bias against Defendant. However, again, having considered Appellant's arguments above, and further, having found no error occurred, we decline to address the subject again.

{¶62} Appellant's final issue presented under the second assignment of error is whether the trial court's rulings as to closing arguments, coupled with the trial court's other rulings in the case result in reversible error. Appellant first contends at the start of trial, the trial court permitted Appellee's counsel to tell the jury that Dr. Adams was a "prisoner dressed in a suit" and denied Adams' motion for a mistrial. During voir dire, Appellee's counsel introduced himself and co-counsel. He then stated:

> "Seating with us- - or sitting with us today is Michelle Burns. And Michelle is the widow of her husband, Bob burns. And seated over here is Jack Adams. Jack- - Mr. Adams is- - or perhaps was a doctor. He was a psychiatrist. And he's seated today in a suite, [sic] but he is here from prison, and will go back later on. So- -."

{¶63} Appellant immediately objected to counsel's making reference to Appellant being in prison or anything related to such, and asked for a mistrial. The trial court then gave a cautionary instruction that opening arguments are not the law. Appellant argues that in permitting counsel to inform the jury that Dr. Adams was a "prisoner dressed in a suit" and in denying the motion for mistrial, a tone of prejudice was established against the defendant and permeated throughout the trial.

{¶64} We have set forth above that the grant or denial of a motion for mistrial is reviewed for an abuse of discretion. Mistrial itself appears to apply almost exclusively to criminal cases. *Settles v. Overpeck Trucking Co.,* 12th Dist.

Butler No. CA90-05-094, 1991 WL 164580, *1. The Ohio Civil Rules fails to

offer any authority which empowers a court to grant a mistrial in a civil case. *Id.*

The standard of review is based upon the fact that the trial court is in the best

position to determine whether the circumstances of the case necessitate the

declaration of a mistrial or whether other corrective actions are sufficient. *Griggs,*

*supra,* ¶ at 11, citing *Quellos, supra.*

{¶65} Furthermore, opening and closing statements are not evidence. *Peffer,*

*supra,* citing *State v. Spaqi,* 8th Dist. Cuyahoga No. 69851, 1997 WL 83120, *7.

We fail to see how counsel's comment and the denial of the mistrial established a

tone of prejudice or caused material prejudice to Appellant. The fact of

Appellant's conviction for the murder of Bobby Burns was later entered into

evidence. The jurors would presume from that information that Appellant received

a prison sentence. The trial court issued a cautionary instruction immediately after

Appellant's objection.[9] We find no material prejudice occurred because of

counsel's remarks concerning Appellant's attire. As such, the trial court did not

abuse its discretion by denying the motion for mistrial.

{¶66} Appellant next contends the trial court permitted Appellee's counsel

---

[9] Indeed, we note the court instructed the jury that the statements of counsel are not evidence at pages 15, 42, 46, and 126 of the trial transcript.

to misrepresent facts in closing, including but not limited to stating that Appellee

was mentally ill and that Dr. Adams gave her narcotics and antidepressants and

took advantage of her. During rebuttal, counsel for Appellee argued:

> "My friends here in this town, and this county, who are doctors have
> made me full aware of the Hippocratic oath, which among other
> things, and all doctors take this, among other things it says, first do the
> patient no harm. Now this man had a woman who was mentally ill
> come to him, not in full control of her faculties, gave her a wide
> variety, of what I can tell from the evidence, narcotic and - -."

{¶67} At this point, counsel objected on the basis that Appellee's counsel

was not allowed to give a new closing and that he was "talking about everything

all over again." The trial court disagreed, but nevertheless gave a cautionary

instruction that the statements made by counsel are not evidence. Burns' counsel

began again:

> "Here is a man, who is a professional person, who has someone come
> to him crying out for help. And she is depressed, he's got her on - - it
> sounds like narcotics and antidepressants. He takes advantage of her.
> She's trusting him. There is a fiduciary relationship. It's like
> somebody coming to me saying, you no, I want to go bankrupt, and I
> say leave me your house, I'll take care of you. It's a horrible thing.
> It's a horrible thing."

{¶68} Appellant's counsel objected again and argued counsel implied

Appellant prescribed medications illegally. Appellee responded that he did not use

the word "illegal," but that he said Appellant "took advantage" of Burns.

Ultimately, the trial court cautioned counsel not to use words like "illegal."

{¶69} Counsel generally has wide latitude in closing arguments. *West v.*

*Curtis,* 7th Dist. Belmont No. 08 BE 28, 2009-Ohio-3050, ¶89; *Pang v. Minch*, 53 Ohio St.3d 186, 194, 559 N.E.2d 1313 (1990).  Moreover, counsel's closing argument must be read in its entirety, and the contested statement must be read in context.  *Curtis, supra*; see, e.g., *State v. Hill,* 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996).

{¶70} A party may freely comment in closing argument on what the evidence has shown and what reasonable inferences the party believes may be drawn therefrom.  *Peffer v. Cleveland Clinic Found., supra* at ¶27, quoting *State v. Clay,* 181 Ohio App.3d 563, 2009-Ohio-1235, 910 N.E.2d 14, ¶47.  But counsel must refrain from making arguments not supported by the evidence and must avoid inappropriate and offensive remarks concerning opposing counsel and witnesses. *Werden v. Children's Hospital Medical Center,* 1st Dist. Hamilton No. C-040889, 2006-Ohio-4600, ¶57.  "When argument spills into disparagement not based on any evidence, it is improper."  *Id.,* citing *Clark v. Doe,* 119 Ohio App.3d 296, 307, 695 N.E.2d 276 (1st Dist.1997), citing *Cusumano v. Pesi-Cola Bottling Co.,* 9 Ohio App.2d 105, 223 N.E.2d 477 (8th Dist.1967).

{¶71} Appellee testified at trial she had multiple serious physical conditions which included a deformed kidney, a blood clot in the lungs, breast cancer, and vaginal cancer.  She had mental health issues when she was approximately 32-33 years old.  She saw Dr. Adams, a psychiatrist, for professional help.  She continued

to see him for follow-up and antidepressants. She was later diagnosed with breast cancer in 2001-2002. She had to have a double mastectomy and the surgeries were "screwed up." She later had to have half of her vagina removed. Appellee testified any woman going through all that was going to have "issues" so she again sought professional help. Appellee testified Dr. Adams placed her on psychiatric meds and multiple narcotic pain medications. At one time, she was taking 21 medications and 7 were strong narcotics. At some point in time, Dr. Adams and Burns engaged in an inappropriate relationship. We believe counsel's remarks characterizing Appellant's prescription of narcotic pain medication and antidepressants for Appellee, and that he "took advantage of her" were fair comments on the evidence. The trial court also gave another cautionary instruction regarding the comments of counsel. As such, we do not think the statements of counsel caused material prejudice to Appellant.

{¶72} Finally, Appellant contends the trial court permitted Appellee's counsel to state that Dr. Adams could have testified and denied Appellee's testimony if it was not true and that it was "bologna" that defense counsel suggested the incident was "partly her fault." The transcript reflects these comments in closing argument:

> "So he takes advantage of her for his own vile sexual purposes. And then when she threatens to say something - - and you know, he had a right to get up here and testify if he wanted. And his attorney had a

right to bring in witnesses to say this is not true if they wanted.  Then he would tell her - -.”

**{¶73}** At this point, Appellant’s counsel again objected and the parties argued about whether you could make statements about a person not testifying in a civil case.  The failure of a defendant in a civil action to testify may properly be commented upon to the jury.  *Whitlatch v. Stern,* 9th Dist. Summit No. 15345, 1992 WL 205071, *8; *Smith v. Lautensleger,* 15 Ohio App.2d 212, 240 N.E. 2d 109, (1st Dist.1968); see, also, *Reichle v. Murphy,* 6th Dist. Lucas No. L-96-067, 1998 WL 472369, *8.  While counsel’s comment here would have obviously been unfair and inappropriate in the context of a criminal trial, we agree the defendant’s failure to testify in a civil action may be the subject of fair comment.

**{¶74}** Appellee’s counsel continued as follows:

“On the issue of punitive damages, and that’s what I’m talking about. When somebody who has that education and that superior status, and professional relationship with a poor woman like this, takes advantage of her in the horrible way that he has done, and then comes to Court, and then has an attorney who has the temerity to say, ‘Well, it’s partly her fault to.[ sic]’  Bologna.  That is defamatory to all the other good doctors out there, and all the other professional people who would never do anything like this (inaudible).”

**{¶75}** Appellant did not object to counsel’s interjection “Bologna.”  Because no objection was raised, we review for plain error.  Given this standard, and the evidence the jury had to consider, we cannot say the outcome of the trial would

have been different had counsel refrained from saying "Bologna" in his rebuttal argument. As such, we decline to find plain error occurred.

{¶76} For the foregoing reasons, we find the trial court did not err and abuse its discretion. We overrule Appellant's second assigned error and affirm the judgment of the trial court.

III. THE PUNITIVE DAMAGE AWARD WAS EXCESSIVE AND CONTRARY TO LAW.

A. STANDARD OF REVIEW

{¶77} "[T]he assessment of damages lies 'so thoroughly within the province of the [trier of fact] that a reviewing court is not at liberty to disturb the [trier of fact's] assessment,' absent an affirmative finding of passion and prejudice, or a finding that the award is manifestly excessive or inadequate." *Lewis v. Nease,* 4th Dist. Scioto No. 05CA3025, 2006 WL 2439754, ¶53, quoting *Musokovitz v. Mt. Sinai Med.Ctr.,* 69 Ohio St.3d 638, 655, 635 N.E.2d 331, 1994-Ohio-324.

{¶78} In *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 123 S. Ct. 1513 (2003), the United States Supreme Court stated a punitive damage award must comport with the principles set forth in *BMW v. Gore,* 517 U.S. 559, 116 S. Ct. 1589 (1996). The Supreme Court of Ohio ordered lower courts reviewing a punitive damage award for excessiveness to use the *Gore* guidelines in *Barnes v. University Hospitals of Cleveland,* 119 Ohio St.3d 173, 2008-Ohio-3344, 893 N.E.2d 142, ¶40.

{¶80} "'Low compensatory damages and high punitive damages assessed by a jury are not in and of themselves cause to reverse the judgment or to grant a remittitur, since it is the function of the jury to assess the damages and, generally, it is not for the trial or appellate court to substitute its judgment for that of the trier of fact. A large disparity, standing alone, is insufficient to justify a court's interference with the province of the jury.'" *T.P. v. Weiss,* 990 N.E.2d 1098, 2013-Ohio-1402*,* at ¶ 46 quoting *Wightman v. Consol. Rail Corp.,* 86 Ohio St.3d 431, 438, 715 N.E.2d 546 (1999), quoting *Vilella v. Waikem Motors, Inc.,* 45 Ohio St.3d 36, 40, 543 N.E.2d 464 (1989).

## B. LEGAL ANALYSIS

{¶81} The purpose of punitive damages is not to compensate the plaintiff, but to punish and deter the defendant's conduct. *Weiss, supra,* at ¶42, citing *Dick v. Tab Tool & Die Co., Inc.,* 5th Dist. Licking No. 2008-CA-0013, 2008-Ohio-5145, ¶33, citing *Dardinger v. Anthem Blue Cross & Blue Shield,* 98 Ohio St.3d 77, 2002-Ohio-7113, 781 N.E.2d 121.

{¶82} Under Appellant's third assignment of error, he raises this issue: whether punitive damages were properly awarded, and if so, whether the award was excessive. Appellant argues insufficient evidence was presented to justify an award of punitive damages. Appellant contends the fact that Appellant was

convicted of murder does not necessarily establish the elements required by R.C.

2315.21, for an award of punitive damages.

{¶83} R.C. 2315.21 provides:

"Subject to division (E) of this section, punitive or exemplary
damages are not recoverable from a defendant in question in a tort
action unless both of the following apply:

(1)  the actions or omissions of that defendant demonstrate malice or
aggravated or egregious fraud, or that the defendant as principal or
master knowingly authorized, participated in, or ratified actions or
omissions of an agent or servant that so demonstrate.

(2) The trier of fact has returned a verdict or has made a determination
pursuant to division (B)(2) or (3) of this section of the total
compensatory damages recoverable by the plaintiff from that
defendant."

{¶84} We first observe that Appellant made no objection to the submission

of jury instructions on punitive damages. When the verdict was returned, Appellant

made no objection at that point. Appellee points out Appellant made no post-

verdict motion to have the punitive damage verdict reduced.

 Generally, arguments raised for the first time on appeal are waived or may be

reviewed only for plain error.  *Weiss, supra,* at 28.

{¶85} Appellee responds that R.C. 2315.21(D)(2)(a) does not apply to this

case.  Appellee points out Appellant was convicted of murder, R.C. 2903.02(A),

which requires one to purposely cause the death of another. R.C. 2315.21(D)(6)

provides:

"Division (D)(2) of this section does not apply to a tort action where the alleged injury, death, or loss to person or property resulted from the defendant acting with one or more culpable mental states of purposely or knowingly as described in Section 2901.22 of the Revised Code and when the  defendant has been convicted of or pleaded guilty to a criminal offense that is a felony, that had as an element,  of the offense one or more of the culpable mental states of purposely or knowingly as described in that section, and that is the basis of the tort action."

{¶86} Appellee argues, R.C. 2315.21(D)(6) operates so as to exempt the instant case from the punitive damage cap.  A similar argument was recently addressed in *T.P. v. Weiss,* 990 N.E.2d 1098, 2013-Ohio-1402.  In *Weiss,* the plaintiff sued the defendant for assault and battery, arising out of sexual assault, for which the defendant was subsequently convicted and which he committed while plaintiff was substantially impaired.  Plaintiff and defendant had a business relationship and had decided to attend a concert together.  At some point in the evening of their concert date, the defendant placed a chemical in her drink.  The defendant eventually entered an Alford plea to a charge of sexual battery, a felony of the third degree.  He was sentenced to six months in jail and fined $7,500.00.  In the civil case, the trial court ordered punitive damages in the amount of $340,000.00.  On appeal, the defendant raised the issue of the necessary mens rea.  Citing an earlier tenth district case, the appellate court noted:

"[S]exual battery under R.C. 2907.03(A)(2) does not require that the offender act with "actual knowledge." Rather, the statute merely requires that the offender act "knowingly." R.C. 2901.22(B) defines "knowingly" as follows:" A person acts knowingly, regardless of

purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

{¶87} The *Weiss* court implicitly found that there was sufficient evidence to support a punitive damages award. The court pointed out that T.P.'s complaint stated a claim pursuant to R.C. 2307.60. The *Weiss* court held, based on the exception found in R.C. 2315.21(D)(6) and the basis of T.P.'s claim, the statutory cap to a punitive damages award did not apply. As such, the trial court did not err with regard to its entry of punitive damages.

{¶88} We have found the trial court did not abuse its discretion with regard to its ruling that Appellant could not present evidence of liability. Appellee testified at trial that she found her husband lying on the floor with four bullet holes in him. Appellant pointed a gun at her and struck her with it and a struggle ensued. She testified she thinks about finding her husband and having a gun pointed at her every day. We find there was sufficient evidence to support a punitive damages award.

{¶89} Appellant also argues the award of punitive damages herein was excessive. Appellant contends the compensatory damage award here is $1,200,000.00 and the punitive damage award is $8,100,000.00- 6.75 times the compensatory award. In support of his argument, Appellant asserts: (1) the trial court's rulings precluded Appellant from demonstrating the lack of reprehensibility

of his conduct; and (2) an excessive verdict having been rendered, the trial court did not offer Appellant a choice between remittitur and a new trial.

{¶90} Courts must examine whether a punitive damage award comports with constitutional requirements, i.e., whether the punitive damage award is not excessive under the Due Process Clause of the United States Constitution. *Weiss, supra,* at ¶ 39. Since at least 1991, the United States Supreme Court has recognized that the Due Process Clause of the Fourteenth Amendment imposes a limit on the size of punitive damage awards. *Weiss, supra,*citing *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 111 S. Ct. 1032 (1991). (Internal citations omitted.). An award of punitive damages violates due process when it can be categorized as "grossly excessive" in relation to the state's legitimate interests in punishing unlawful conduct and deterring its repetition. *Weiss, supra*, citing *BMW. v. Gore*, 517 U.S. 559, 568, 116 S. Ct. 1589 (1996); *Barnes v. University Hospitals of Cleveland,* 119 Ohio St.3d 173, 2008-Ohio-3344, 893 N.E.2d 142, ¶31.

{¶91} In *BMW v. Gore,* the United States Supreme Court "instructed that elementary notions of fairness 'dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." *Barnes,* at ¶32, citing *Gore,* 517 U.S. at 574, 116 S. Ct. 1589. The Court established three factors to use in "evaluating whether a lack of notice renders a punitive damage award grossly excessive and therefore

unconstitutional: (1) the degree of reprehensibility of the defendant's misconduct, (2) the disparity between the harm or potential harm suffered by the plaintiff and the punitive damages award, and (3) the difference between the award and the civil penalties authorized or imposed in comparable case. Id. at 575, 116 S.Ct. 1589." *Barnes,* at ¶32.

{¶92} Of the *Gore* "guideposts," the first is the degree of reprehensibility of the defendant's conduct. It is "the most important indicium of the reasonableness of a punitive damage award." *Weiss, supra* at 43 quoting *Barnes,* at ¶33, citing *Gore,* at 575, 116 S. Ct. 1589.

> "A review of reprehensibility includes consideration of whether (1) 'the harm caused was physical as opposed to economic,' (2) 'the tortious conduct evidence an indifference to or  a reckless disregard for the health or safety of others,' or (3) 'the target of the conduct had financial vulnerability,' (4) 'the conduct involved repeated actions or was an isolated incident,' and (5) 'the harm was the result of intentional malice, trickery, or deceit, or mere accident.'" *Weiss, supra*, at ¶ 43, quoting *Barnes,* at ¶ 33 citing *State Farm*, 538 U.S. at 419, 123 S. Ct. 1513.

{¶93} The second guidepost and the "'most commonly cited indicium of an unreasonable or excessive punitive damages award is its ration to the actual harm inflicted on the plaintiff.'" *Weiss, supra,* at 44, quoting *Barnes* at ¶34, citing *Gore,* 517 U.S. at 580, 116 S.Ct. 1589. The United States Supreme Court rejected a mathematical formula to assess the reasonableness of punitive damage awards. Id. It recognized that "'low awards of compensatory damages may properly support a

higher ration than high compensatory awards, if, for example, a particularly

egregious act has resulted in only a small amount of economic damages. '"

*Barnes,* at ¶34 citing *Gore,* 517 U.S. at 582, 116 S.Ct. 1589.

{¶94} The *Weiss* court noted the final guidepost involves "'comparing the

punitive damages award and the civil or criminal penalties that could be imposed

for comparable misconduct. Id. at ¶45; *Barnes* at ¶36 citing G*ore,* 517 U.S. at 583,

116 S.Ct. 1589.

{¶95} We begin by reviewing the degree of reprehensibility of Appellant's

conduct.  In doing so, and using the five factors set forth in *Barnes* when

evaluating reprehensibility, we note the harm in this case was physical and

emotional.  The testimony revealed Bobby Burns died and Appellee found her

husband lying on the floor.  Appellant was pointing a gun at him and then pointed

it at Appellee.  She ran from him and he struck her with the gun and pointed it at

her forehead.  They struggled.  Appellee testified she had bruises all over her.

Appellee testified every day she thinks about seeing her husband lying with four

bullet holes in him, Appellant pointing a pistol at her forehead.

{¶96} Appellee also testified she had serious health problems and multiple

surgeries in the years leading up to her husband's murder.  She had worked

intermittently. Bobby Burns had worked steadily since graduating from high

school.  It can also be said that Appellee was financially vulnerable.  Although the

murder of Burns was a single incident, it can be said that Appellant's conduct involved repeated actions in that Appellee testified he was making calls to her home, showing up at Appellee's workplace and lurking around after Appellee terminated her relationship with him.

{¶97} Finally, Appellant was convicted of R.C. 2903.02 murder, which states: "No person shall purposely cause the death of another…." R.C. 2901.22 defines "purposely" as "A person acts purposefully when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." "Actual malice" is defined as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Smith v. Redecker,* 4th Dist. Athens No. 08CA33, 2010 WL 541355,¶62, citing *Muskovitz,* 669 Ohio St.3d 638, 652, 635 N.E.2d 331 (1994), quoting *Preston v. Murty,* 32 Ohio St.3d 334, 512 N.E.2d 1174 (1987), syllabus. Here, the act of sneaking into the Burns' home with a loaded firearm, shooting Mr. Burns, and pointing the gun at Appellee demonstrates a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial

harm.  We think Appellant's actions demonstrated a high degree of reprehensibility.

{¶98} The second guidepost indicating an excessive punitive damages award is its "ratio to the actual harm inflicted on the plaintiff.'" *Weiss, supra,* at 44, quoting *Barnes,* at 34, citing Gore, 517 U.S. at 582, 116 S.Ct. 1589.  In *Weiss,* the compensatory damages award was $17,313.34 and the punitive damages award was $340,000.00, a ratio of 20-to-one.  The United States Supreme Court rejected a mathematical formula to assess the reasonableness of punitive damage awards.  It recognized that "'[L]ow awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages.'" *Barnes,* at 34 citing *Gore,* 517 U.S. at 582, 116 S.Ct. 1589.  The *Weiss* court noted "the Ohio Supreme Court has allowed a punitive damage award with a ratio of 6,250-to-one damages ratio to stand, but the Court has invalidated a 20-to-one ratio. *Weiss, supra*; *Barnes*, at 34 quoting *Wightman v. Consol. Rail Corp.,* 86 Ohio St.3d 431, 1999-Ohio-119, 715 N.E.2d 546; *Dardinger v. Anthem Blue Cross & Blue Shield*, 98 Ohio St.3d 77, 2002-Ohio-7113, 781 N.E.2d 121.  Here, the compensatory damages award is $1,200,000.00, and the punitive damages award is $8,100,000.00. The ratio is 6.75-to-one.

{¶99} The third and final guidepost involves comparing the punitive

damages award and the civil or criminal penalties that could be imposed for

comparable misconduct. *Weiss, supra,* at 45. In the case at bar, Appellant was

sentenced to a prison term of fifteen (15) years to life.[10] He was also subject to a

$15,000.00 fine.

{¶100} We note the following:

> "There is no magic formula for determining the proper amount of
> punitive damages. Rather, the amount that should be awarded is the
> amount that best accomplishes the twin aims of punishment and
> deterrence as to that defendant. "We do not require, or invite, financial
> ruination of a defendant that is liable for punitive damages. While
> certainly a higher award will always yield a greater punishment and
> greater deterrent, the punitive damages award should not go beyond
> what is necessary to achieve its goals. The law requires an effective
> punishment, not a draconian one.' *Dardinger,* 2002-Ohio-7113, 98
> Ohio St. 3d 77, 781 N.E. 2d 121 at 178." *Winner Trucking, Inc. v.
> Victor L. Dowers & Assoc.* 2nd Dist.Darke No. 1695, 2007 Ohio-
> 3447,¶ 39. See, also, *Innovative Tech. Corp., v. Advanced
> Management Tech. Inc.,* 2nd Dist. Montgomery No. 23819, 2011-
> Ohio-5544, ¶ 118.

{¶101} Based on the above, we find the punitive damages in this case to be

reasonable and proportionate.

{¶102} Appellant urges the trial court should have offered remittitur or in

the alternative, a new trial. We find nothing in the record to indicate Appellant

requested a remittitur or new trial. It may not be said that failure to do so

---

[10] Appellant was sentenced to an additional term of three (3) years as a mandatory and consecutive term pursuant to R.C. 2923.13(F)(8) and 2929.14(D0(1) to be served before any other time is served.

constituted an abuse of discretion. *Burchfield v. Omar,* 135 N.E.2d 703, 72 Ohio

Law Abs. 467 (2nd Dist. 1954).   As such, we affirm the judgment of the trial court

and overrule the third assignment of error.

**JUDGMENT AFFIRMED.**

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. & *Ringland, J.: Concur in Judgment and Opinion.


For the Court,


BY:    _____
               Matthew W. McFarland, Judge


### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**


*Judge Robert P. Ringland, from the Twelfth Appellate District, sitting by assignment of The Supreme Court of Ohio in the Fourth Appellate District.